THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* KENNETH CREED, Defendant-Appellee.

(No. 75-53;

Third District—December 19, 1975.

Henry D. Sintzenich, State's Attorney, of Macomb (James Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

J. D. Lucie, of Bushnell (Robert E. Roy, Jr., of counsel), for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Kenneth Creed was indicted for unlawful possession of cannabis, 30 to 500 grams (Ill. Rev. Stat. 1973, ch. 56½, § 704(d)). Defendant moved to suppress the seized marijuana as evidence (Ill. Rev. Stat. 1973, ch. 38, § 114—12(a)(1)). The motion was primarily based on the contention that the arresting officers illegally entered defendant's home. The trial court granted the motion to suppress and the State has appealed. See Ill. Rev. Stat. 1973, ch. 110A, § 604(a)(1).

From the evidence heard at the hearing on the motion to suppress, it appears that officers Douglas and Lewis of the Macomb, Illinois, Police Department, went to a home at about 1:30 a.m. on September 6, 1974, in response to a neighbor's call complaining of loud noise. The officers testified that when they got out of their squad car some 30 or 40 feet from the front of the house, they smelled what they thought was the odor of burning marijuana. The house was in a residential section of the city and was surrounded by other houses on both sides and across the street. Because of the smell, the officers radioed for a backup unit. Meanwhile, Officer Douglas approached the front of the house while Officer Lewis went around to the back. They testified that the odor grew stronger as they neared the premises.

Douglas knocked on the door and was greeted by a young man named Dwight Ellsbury. Douglas testified that as Ellsbury approached the door he appeared to be carrying a cigarette in his hand which he cupped, as if to shield it from the officer's view. Douglas said Ellsbury threw the cigarette to the floor as he reached the door, but upon a later search, the officer could not find it. The officer testified that the cigarette appeared to be hand rolled, but the officer could not tell if it had a filter or not, or whether it was lit. He was also not sure if the opaque shade attached to the glass door was up or down at this time.

Ellsbury, on the other hand, testified that he had no cigarette in his hand when he approached the door, and that the shade was pulled down, since he had to pull it back slightly to see who was at the door. Douglas asked Ellsbury if he could talk to the owner or renter of the home. He also testified that Ellsbury's breath bore the same odor that he had smelled in the yard. Ellsbury then went back in the house to locate Creed, who was renting the premises, but several minutes expired and no one returned to the door. Officer Douglas then, joined by his partner Lewis and Officer Clark, as backup, went into the house. They

pushed past Ellsbury who was in the front hall and went into the living room where several people were sitting. There the officers saw some freshly burned residue and seeds which they suspected to be cannabis. The group of people were told they were under arrest, and the officer began taking names and addresses. No one was searched.

Defendant Creed then left the living room and was followed by Officer Douglas into another room, where Creed was found attempting to place a bag of marijuana into a duffel bag. The sack was later found to contain around 270 grams of marijuana.

■■ Defendant's contention in the trial court, which was accepted by the trial court, was that on the facts of this case, the officers had no authority to enter the house without a warrant or the consent of the occupant. There can be no doubt that the constitutional prohibition contained in the Illinois Constitution and the United States Constitution against unreasonable searches and seizures extends to individuals and their invited guests in the privacy of their homes. (*Johnson v. United States* (1948), 333 U.S. 10, 13, 92 L.Ed. 436, 440, 68 S.Ct. 367; *Vale v. Louisiana* (1970), 399 U.S. 30, 26 L.Ed.2d 409, 90 S.Ct. 1969; *People v. Abrams* (1971), 48 Ill.2d 446, 451, 271 N.E.2d 37.) It is generally considered that a search and seizure is unreasonable *per se* if conducted without a judicially issued warrant. (*Vale v. Louisiana* (1970), 399 U.S. 30, 34, 26 L.Ed.2d 409, 413; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454-5, 468, 29 L.Ed.2d 564, 576, 584, 91 S.Ct. 2022; *Katz v. United States* (1967), 389 U.S. 347, 357, 19 L.Ed.2d 576, 585, 88 S.Ct. 507.) This rule is subject to a few exceptions, including search by consent; search incident to arrest (*Chimel v. California* (1969), 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034); search based on probable cause where there are "exigent" circumstances which make it impractical to obtain a warrant (see *People v. Hering* (4th Dist. 1975), 27 Ill.App.3d 936, 940-41, 327 N.E.2d 583).

The search involved in the present case was conducted without a warrant and without consent of defendant Creed who was renting the premises in question. The only two possible justifications for the search would be if the police were entering the house to arrest someone, provided they had probable cause to make the arrest (Ill. Rev. Stat. 1973, ch. 38, §§ 107—2(c), 107—5(d)); or they could enter upon probable cause to believe a crime is being committed, if there were exigent circumstances allowing the police to dispense with the warrant requirement.

On the basis of the record, the officers' entry into Creed's house was based on two observations. There was the initial detection of apparent marijuana odor outside the house, and, secondly, there was Officer Douglas' version of his encounter with Ellsbury at the front door. The testimony regarding these two factors was in part conflicting and subject

to varying inferences, the resolution of which was within the province of the trial court.

The officers testified that they initially determined to enter the house when they first emerged from their vehicle and smelled what they thought to be a marijuana odor. At that time the officers were some 30 to 40 feet from the Creed residence and were outdoors, in the midst of a residential neighborhood with other houses all around them. The officers were neither trained nor experienced in the detection of marijuana by scent. Officer Lewis stated he once smelled some marijuana burning in a closed room in a training session, while Officer Douglas had smelled an odor, on occasion while serving in Vietnam, which he was told was marijuana smoke. The odor smelled by the officers did get stronger as they approached the premises.

There was direct conflict in the testimony of Officer Douglas and that of Ellsbury. Officer Douglas' testimony standing alone contains some doubtful and possibly inconsistent portions regarding the nature of the alleged cigarette held by Ellsbury, and whether or not the door shade was up. Officer Douglas also testified that Ellsbury was not arrested.

■■ The State relies on a number of cases in Illinois and other jurisdictions to support its position that the officers' entry into the Creed home was lawful. They cite the general rule in *People v. Erb* (2d Dist. 1970), 128 Ill.App.2d 126, 132, 261 N.E.2d 431, where the court stated:

> "Where the smell of contraband is established to the satisfaction of the court, it is a sufficient basis under proper circumstances for officers to believe that a crime is being committed in their presence."

The cases indicate, however, that there must be more than the mere alleged smell of marijuana. The corroborative evidence in various cases cited by the State includes a prior informer's tip as to drug on the premises (*State v. Bennett* (1972), 158 Mont. 496, 493 P.2d 1077); actual observation of marijuana through the open door (*People v. Boone* (1969), 2 Cal.App.3d 66, 82 Cal.Rptr. 398; *People v. Stephenson* (Colo. 1974), 529 P.2d 1333); or the viewing of related paraphernalia (*State v. Crothers* (La. 1973), 278 So.2d 12). In one case the odor itself was held to be enough probable cause, but in that case it was clearly shown to emanate from the premises, since the officer did not smell the marijuana smoke until the door was opened. *State v. Lafferty* (Ore. App. 1974), 528 P.2d 1096.

■■ In Illinois there are two cases which were determined by our court in which probable cause was found when the officers, well trained in the detection of marijuana, smelled what they thought to be marijuana in an automobile after stopping the automobile for a traffic violation (*People v. Loe* (3d Dist. 1973), 16 Ill.App.3d 291, 306 N.E.2d 268; *People*

*v. Wolf* (3d Dist. 1973), 15 Ill.App.3d 374, 376, 378, 304 N.E.2d 512.) Note also the distinctive factor that an automobile, being portable and capable of rapid movement, was involved in each situation. The court here, however, found that the entry by the officers was made solely on the basis of a questionable determination by the officers that there was an odor of marijuana being emitted in the area around the Creed home. We agree with the trial court that under such circumstances the entry of the officer without consent or warrant was unjustified.

The determination of this issue depended upon the credibility of the witnesses and weighing inferences from the testimony of the witnesses, all of which are (under the record here) exclusively within the province of the trial court and with which a court of review is extremely reluctant to interfere. *People v. Haskell* (1968), 41 Ill.2d 25, 30, 241 N.E.2d 430.

■ We are aware, also, that in passing on the question of whether probable cause existed, we must judge the event, not in terms of legal niceties, but in the light of factual circumstances and exigencies which actually confronted the officers (*People v. Cole* (1973), 54 Ill.2d 401, 410, 298 N.E.2d 705). The facts, however, which are relevant to the existence or lack of probable cause in the instant case were in dispute and the trial court, who heard and saw the witnesses, was entitled to determine what were reasonable inferences and resolutions of the conflicts and the testimony.

We conclude, therefore, on the basis of the record that the trial court could have found that the factual situation did not justify the officers in entering the house without a warrant or the consent of defendant. For the reasons stated, we affirm the decision of the trial court in granting the motion to suppress the evidence.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.