THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PAUL COHEN et al., Defendants-Appellees.

Second District   No. 2—85—0544

Opinion filed August 19, 1986.—Rehearing denied September 18, 1986.

Fred L. Foreman, State's Attorney, of Waukegan (Kenneth R. Boyle, of State's Attorneys Appellate Prosecutor, of Springfield, and William L. Browers and Peter Tumminaro, both of State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Thomas A. Briscoe, of Will & Briscoe, Ltd., and Jed H. Stone, both of Waukegan, and Mary Robinson, of Robinson & Skelnik, of Elgin, for appellees.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Defendants, Paul Cohen and Earl Sklar, were charged by indictment with the unlawful possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)), unlawful possession of a controlled substance (Ill. Rev. Stat. 1983, ch. 56½, par. 1402(b)) and unlawful possession of cannabis (Ill. Rev. Stat. 1983, ch. 56½, pars. 704(b), 704(c)). Defendants' pretrial motions to suppress the contraband evidence seized in defendant Cohen's residence were granted by the trial court on the ground it had been obtained as a result of an unlawful search by a police officer.

The State has appealed, contending (1) the warrantless entry of the Cohen residence by the police officer was properly based upon probable cause and exigent circumstances; (2) the seized contraband was observed by the officer in plain view from a place where he had a right to be; and (3) defendant Sklar lacked standing to seek suppression of the evidence as to him.

Officer William Tellone of the Highland Park police department and defendant Paul Cohen testified at the suppression hearing. Tellone stated that at about midnight on December 23, 1984, he was investigating vandalism cases in which the windows of 18 to 23 vehicles had been damaged or broken out. The officer noticed a car parked in front of the residence at 1150 Melvin Drive which had been so vandalized and learned by a radio license check that it belonged to John and Mary Nicholas of 1013 Central Avenue in Highland Park. The officer saw activity in the house in front of which it was parked and decided to inquire there for the owner of the car. At that time, the officer had no knowledge of the presence of drugs in

that residence nor was he investigating any criminal activity there. Officer Tellone testified that he rang the doorbell and it was answered by defendant Earl Sklar, who opened it approximately 3 feet. The officer then noticed the odor of burnt cannabis on Sklar and emanating from the interior of the house, and also saw a smoky haze in the living room of the house.

The officer informed Sklar of the vandalism to the car and inquired whether he owned it or the residence. Sklar responded that the car belonged to John Nicholas and the homeowner was Paul Cohen, the codefendant. Officer Tellone testified that when he asked to speak to the homeowner, and to John Nicholas regarding the vandalism, Sklar stepped back and opened the door wider, at which time Tellone stepped into the foyer of the residence. Sklar then called out in a loud voice, "It's the police," and called John Nicholas into the foyer. The officer testified that when Nicholas appeared he also noticed a strong odor of burnt cannabis from his person. The officer told Nicholas he had found vandalism to his car and asked to speak to the owner of the house. Nicholas said the owner was Paul Cohen and that he was in his bedroom; Nicholas then turned and walked down the hallway with Officer Tellone following. At about halfway down the hall, Nicholas stopped and stepped to the side to let the officer pass him. Officer Tellone continued along the hall to its junction with another hall leading to bedrooms and turned down it to a bedroom in which he saw a light and heard activity, a distance of some 50 feet from the front door of the home.

Officer Tellone testified he walked to the door of the bedroom, which was fully open. From the doorway he saw a glass mirror on the floor of the bedroom with seven lines of cocaine on it. The officer noticed a strong odor of burnt cannabis from the room and saw a water pipe, a clear plastic bag containing a white powdery substance, plastic baggies containing folded paper packets, and a large gram scale on which was a white powder. Defendant Paul Cohen stepped out of the room and there were two other men inside. Tellone placed the three men under arrest and at that time heard a door open in the kitchen and three persons leave the house; he then called for assistance on his radio. When other officers arrived, Officer Tellone secured the residence so that no one could enter or leave and transported the three men to the police station. Tellone then sought a search warrant for the premises and returned at 7:45 a.m. with the warrant and, with other officers, searched the premises seizing drugs and drug paraphernalia.

Officer Tellone further testified that his purpose in going to the

bedroom was to determine if the owner of the premises was aware that marijuana was being smoked in the house and if all of the persons therein belonged in the house. He stated that he did not open the bedroom door nor did he enter that room at the time he first saw the drugs in it, and that no search was made in the house until after the warrant was obtained. The officer also testified regarding his familiarity and experience with various illegal drugs and drug paraphernalia, such as those seized in the Cohen residence.

Defendant Paul Cohen testified that he lived in the residence with his parents who were out of town on the night in question; at that time, only defendants Cohen and Sklar and five others were present. Cohen stated some cannabis smoking had occurred in the house earlier that night and that neither he nor any other family member had given permission for police officers to enter or search it. Cohen also testified that his bedroom door was closed when Officer Tellone reached it and defendant Sklar had opened the door to tell Cohen there was a policeman in the house. Cohen described Sklar as a frequent visitor to the house who had sometimes stayed overnight; he and the others had come over that night to watch movies.

The ultimate test under the fourth amendment of the United States Constitution and section 6 of article I of the Illinois Constitution is one of reasonableness. (*Marshall v. Barlow's Inc.* (1978), 436 U.S. 307, 315-16, 56 L. Ed. 2d 305, 313, 98 S. Ct. 1816, 1822; *People v. Free* (1983), 94 Ill. 2d 378, 395, 447 N.E.2d 218, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) In determining whether law-enforcement officials acted reasonably in a given case, courts should judge the facts and circumstances known to officials at the time they acted. (*People v. Smithers* (1980), 83 Ill. 2d 430, 434, 415 N.E.2d 327; *People v. Olson* (1983), 112 Ill. App. 3d 20, 23, 444 N.E.2d 1147, *appeal denied* (1983), 94 Ill. 2d 556.) It is a basic principle of fourth amendment law that warrantless searches and seizures are presumptively unreasonable unless they fall within a few exceptions: search by consent, search incident to arrest, and search based on probable cause with exigent circumstances present which make it impractical to obtain a warrant. (*Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514; *People v. Hoffstetter* (1984), 128 Ill. App. 3d 401, 404, 470 N.E.2d 1247; *People v. Gardner* (1984), 121 Ill. App. 3d 464, 467-68, 459 N.E.2d 676, *appeal denied* (1984), 101 Ill. 2d 548.) The proscriptions of the fourth amendment apply equally to entries of a private residence to seize property or to arrest persons. *People v. Abney*

(1980), 81 Ill. 2d 159, 166, 407 N.E.2d 543; *Payton v. New York* (1980), 445 U.S. 573, 585, 63 L. Ed. 2d 639, 650, 100 S. Ct. 1371, 1379; *People v. Wilson* (1980), 86 Ill. App. 3d 637, 641-42, 408 N.E.2d 988.

## I

The State contends first that the warrantless entry by the officer into defendant Cohen's residence did not violate the fourth amendment as it was based upon probable cause and exigent circumstances requiring immediate action. The State argues that by the strong odor of burnt cannabis the officer had probable cause to believe that the crime of possession of an illegal substance was taking place in the officer's presence and the exigent circumstance that it was likely to be destroyed if the officer left the premises made it impractical to obtain a search warrant.

In their briefs, neither the State nor defendants discuss whether the officer's initial entry to the Cohen residence was authorized by the consent of defendant, Earl Sklar, who opened the door. The focus of their arguments is on the authority of the officer to proceed into the bedroom areas of the home where the contraband was viewed by him. The question of Sklar's status in the home will be addressed later in this opinion in relation to the issue of his "standing" to seek suppression of evidence seized in the Cohen home. In any event, assuming, *arguendo*, the officer was lawfully in the foyer of the residence while making inquiries regarding the vandalized vehicle parked in front of the house, the question remains whether he was authorized in these circumstances to proceed to the other areas of the home.

■ It has been established that the detection of the odor of burnt cannabis by a trained police officer is a permissible method of establishing probable cause that the substance is present. (*People v. Stout* (1985), 106 Ill. 2d 77, 87, 477 N.E.2d 498; *People v. Kelley* (1982), 104 Ill. App. 3d 51, 53, 432 N.E.2d 630; *People v. Erb* (1970), 128 Ill. App. 2d 126, 132, 261 N.E.2d 431.) From his position outside the front door of the Cohen residence, Officer Tellone smelled the odor of cannabis on the person of defendant Sklar and coming from the foyer; he also noticed a smokey haze in the adjoining living room of the home. The defendants do not dispute that the training and experience of the officer was sufficient to enable him to identify the odor. Thus, having probable cause to believe that criminal activity was taking place, the question becomes whether the officer was justified under fourth amendment standards in entering the house and

proceeding to the bedroom area without a warrant in search of further evidence of criminal conduct.

■ The State relies upon *People v. Stout* (1985), 106 Ill. 2d 77, 477 N.E.2d 498, arguing there is no basis for a distinction between the search of an automobile after detection of the odor of cannabis emanating from it, and the search of the private residence in the present case. We do not agree. In *People v. Stout,* our supreme court did not find that in such circumstances probable cause existed to justify a warrantless search of an automobile for cannabis. The court also recognized in that case there are different standards to be applied to automobile and building searches (106 Ill. 2d 77, 86, 477 N.E.2d 498), and did not suggest that the "automobile exception" to the warrant requirement was to be extended to a private residence. Although sufficient to justify the warrantless search of an automobile, having probable cause from the odor of burning cannabis will not alone justify an officer to enter and search a private residence. *People v. Hoffstetter* (1984), 128 Ill. App. 3d 401, 407, 470 N.E.2d 1247; *People v. Kelley* (1982), 104 Ill. App. 3d 51, 53-54, 432 N.E.2d 630; see also *Johnson v. United States* (1948), 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367; *People v. Creed* (1975), 34 Ill. App. 3d 282, 285, 339 N.E.2d 305.

■ The State argues further that the exigent circumstances which confronted the officer authorized his entry without a search warrant. In *People v. Abney* (1980), 81 Ill. 2d 159, 427 N.E.2d 543, the court noted some exigent circumstances which may justify a warrantless entry of a residence: (1) the recentness of the offense and the need for prompt action, such as under the hot-pursuit doctrine; (2) the absence of deliberate or unjustified delay by officers during which a warrant could have been obtained; or (3) an armed suspect therein who had exhibited signs of violence. Other factors suggesting the intruding officer acted reasonably were: (1) the existence of a clear showing of probable cause; (2) defendant was clearly identified; (3) the belief defendant was on the premises; and (4) the entry was peaceful.

■ The State asserts the offense was recent, indeed, being committed in the officer's presence; there was no delay on the part of the officer during which a warrant could have been obtained; and, although there was no evidence of weapons or violence, defendant Sklar did announce to others in the house the police were there. The State suggests Officer Tellone then acted reasonably in entering the home and going to the bedroom area as he had identified the presence of burnt cannabis by odor and saw smoke in the air; he knew

the suspects were in the house; and, his entry was peaceful.

It seems evident, however, that the probable cause which arose from the odor of cannabis on the persons of Sklar and Nicholas, and from the smoke haze in the air, when Officer Tellone stood outside the home or in its foyer, did not justify him to conduct a general exploratory search of the remote bedroom areas of the home. The officer had no reason to believe controlled substances would be located there. At most, the officer may have had probable cause to arrest Sklar and Nicholas (but see *People v. Harshbarger* (1974), 24 Ill. App. 3d 335, 338, 321 N.E.2d 138); however, he did not do so at that time and the State does not claim that the officer was making a search of the premises incident to an arrest.

Nor does consideration of the exigency factors establish that the need for a search warrant may be excused in these circumstances. The fact evidence was present that Sklar and Nicholas had recently been exposed to burning cannabis does not suggest a need to search the house to apprehend a dangerous criminal in order to prevent harm to others. The officer did not direct his attention to Sklar and Nicholas from whom the evidence of an offense emanated, but proceeded to the interior of the residence; there is no suggestion of violence on the part of any person in the home.

The State stresses, however, the likelihood evidence of crime would be destroyed or removed from the premises if the officer did not immediately search for it and, instead, withdrew to secure a search warrant, citing *United States v. Rubin* (1973), 474 F.2d 262, *cert. denied* (1973), 414 U.S. 833, 38 L. Ed. 2d 68, 94 S. Ct. 173, and *People v. Blake* (1981), 93 Ill. App. 3d 538, 417 N.E.2d 682. It argues that an exigent circumstance was supplied because drugs may be readily destroyed and defendant Sklar had called a warning to others in the house that police were present.

These factors were the basis for the findings by the courts in *Rubin* and *Blake* that it was reasonable for officers to enter the private premises without warrants to seize contraband drugs. In both cases, however, the officers also had probable cause to believe the defendants were trafficking in drugs through their residences and defendants had called warnings to confederates of the approach of the police. In the present case, the officer had no prior evidence of drug trafficking at the Cohen home or by defendants. The general rule in Illinois is that the potential destruction of evidence, standing alone, does not excuse obtaining a warrant. *People v. Ouellette* (1979), 78 Ill. 2d 511, 520, 401 N.E.2d 507; *People v. Olson* (1983), 112 Ill. App. 3d 20, 24, 444 N.E.2d 1147, *appeal denied* (1983), 94

Ill. 2d 556; *People v. Kelley* (1982), 104 Ill. App. 3d 51, 54, 432 N.E.2d 630; *People v. Patrick* (1981), 93 Ill. App. 3d 830, 833, 417 N.E.2d 1056.

■ The State also argues that under *People v. Eichelberger* (1982), 91 Ill. 2d 359, 438 N.E.2d 140, where a crime is being committed in the presence of an officer the other exigency factors need not be present. In that case the court held that where officers reasonably believed a felony was being committed in their presence the warrantless entry of defendant's hotel room to arrest him, and the contemporaneous search, were proper. (91 Ill. 2d 359, 370-71, 438 N.E.2d 140.) In *People v. Olson* (1983), 112 Ill. App. 3d 20, 24-25, 444 N.E.2d 1147, *appeal denied* (1983), 94 Ill. 2d 556, this court found no basis to extend that rule to permit entry to a home for a nonviolent Class C misdemeanor which officers had observed being committed therein. In *People v. Hoffstetter* (1984), 128 Ill. App. 3d 401, 470 N.E.2d 1247, the court noted that "the odor of marijuana would only suggest to the officers the commission of a misdemeanor, which would not present the kind of exigent circumstances which would permit a warrantless intrusion into a person's home or living quarters" (128 Ill. App. 3d 401, 407, 470 N.E.2d 1247). It is apparent in the present case, as the trial court found, that the officer did not enter the home, or the bedroom area of it, to make an arrest for the offense he suspected, but did so to search for evidence of that or other offenses.

We conclude exigent circumstances were not present to validate the officer's warrantless entry and search of the Cohen residence.

## II

■ The State contends, alternatively, that the entry of the residence by the officer was not unreasonable under the fourth amendment as it was limited to the securing of the house to prevent removal or destruction of evidence while a search warrant was obtained. The State argues the subsequently seized contraband was thus observed by the officer in "plain view" from a place he had a right to be and formed the basis for the search warrant by which it was seized.

The State relies upon *Segura v. United States* (1984), 468 U.S. 796, 82 L. Ed. 2d 599, 104 S. Ct. 3380, where narcotics agents arrested defendant Segura in the lobby of his apartment building, having probable cause to believe he was trafficking in narcotics. The agents then took Segura to his apartment and entered it without a warrant or justification by reason of exigent circumstances. Two

agents remained in the apartment while others obtained a warrant to search it for drugs. The search warrant which ultimately issued was based entirely on information known to the agents prior to their entry of the apartment, and not supported at all by any observations made within the apartment after the illegal entry by the agents. In *Segura,* a majority of the court held that the evidence seized in the apartment pursuant to the warrant was not the fruit of the illegal entry, and thus suppressible, as none of the information upon which the search warrant was based resulted from the illegal entry.

*Segura v. United States* must be distinguished under the facts of the present case as here all of the facts in Officer Tellone's affidavit in support of the search warrant related to his observations made in various portions of the Cohen home after entry; none of the matters contained in the affidavit related to the officer's observations prior to that entry. It necessarily follows that the evidence seized under the search warrant was the fruit of the illegal entry and was properly suppressed.

## III

■■ The State next contends the trial court erred in suppressing the evidence seized in the Cohen home as to defendant Sklar, arguing Sklar lacked standing to seek suppression as he had no legitimate expectation of privacy in the home.

In *Rakas v. Illinois* (1978), 439 U.S. 128, 134, 58 L. Ed. 2d 387, 395, 99 S. Ct. 421, 425, and *United States v. Salvucci* (1980), 448 U.S. 83, 85, 95, 65 L. Ed. 2d 619, 623, 630, 100 S. Ct. 2547, 2549, 2554, the court determined that only an accused who suffers a violation of his own fourth amendment rights can claim the benefits of the exclusionary rule. The court rejected its prior holding in *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, that a "target" defendant against whom a search had been directed or a person who was legitimately on the premises searched had automatic standing to contest the legality of the search.

In the present case the trial court found that defendant Sklar was a social guest at a gathering in the Cohen residence who did not claim to be the owner of the contraband or to have any proprietary interest in the premises and had no expectation of privacy therein. The court considered, however, that it would be unconscionable to allow the State to prosecute Sklar with the evidence it had suppressed as to codefendant Cohen and, on that ground, suppressed the evidence as to both defendants.

Both the State and defendant Sklar essentially rely upon *People*

*v. Seybold* (1981), 98 Ill. App. 3d 236, 423 N.E.2d 1132, in which this court held that Seybold had sufficient contacts with the searched premises to have an expectation of privacy in it. That defendant stayed occasionally in his friend's apartment, kept clothes there and paid rent. He also listed that address as his own when released on bail after his arrest and was alone in the apartment when the officers entered it. In the present case, defendant Sklar was a friend of an actual resident of the home, Paul Cohen, and had visited there before and occasionally slept in the home. On the night in question, Sklar was present attending a social gathering in the Cohen home in which marijuana was smoked and movies were to be watched.

We agree defendant Sklar had no reasonable expectation of privacy in the searched premises and thus lacked standing to seek suppression of evidence seized in the Cohen home. At most, he was a social guest in a place where he had an invited right to be, but had no other interest in the premises or its contents. It has been held that to have standing to challenge the search of a residence one must show an unrestricted right of occupancy, custody or control of it; it is insufficient if one is only occasionally on the premises as a guest or invitee. (*United States v. Baron-Mantilla* (11th Cir. 1984), 743 F.2d 868; *United States v. Adamo* (6th Cir. 1984), 742 F.2d 927.) We conclude defendant Sklar lacked standing to seek suppression of the evidence and the order suppressing it must be reversed as to him.

■ The State has raised further issues in its reply brief which were neither offered in the trial court nor in its initial brief on appeal and they will not be considered. 87 Ill. 2d R. 341(e)(7); *People v. Canaday* (1971), 49 Ill. 2d 416, 424, 275 N.E.2d 356; *People v. Kinion* (1982), 105 Ill. App. 3d 1069, 1077, 435 N.E.2d 533, *cert. denied* (1983), 460 U.S. 1014, 75 L. Ed. 2d 484, 103 S. Ct. 1256.

Accordingly, the judgment of the circuit court suppressing evidence will be affirmed as to defendant Paul Cohen and reversed as to defendant Earl Sklar and the cause remanded for further proceedings.

Affirmed in part, reversed in part and remanded.

REINHARD and UNVERZAGT, JJ., concur.