MARK ROBERT HOWE, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 24408

April 30, 1996                                    916 P.2d 153

*James J. Jackson,* State Public Defender and *James P. Logan,* Deputy Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *John M. Hanford,* District Attorney and *Michael D. Jensen,* Deputy District Attorney, White Pine County, for Respondent.

# OPINION

By the Court, SHEARING, J.:

Mark Robert Howe appeals from a judgment of conviction, pursuant to a guilty plea, of one count of using or being under the influence of a controlled substance, a felony, in violation of NRS 453.411, and one count of possession of drug paraphernalia, a misdemeanor, in violation of NRS 453.566. The district court sentenced Howe to three years in the Nevada State Prison. The judge suspended Howe's sentence and placed him on probation for a period not to exceed three years. On appeal, Howe contends that the district court erred in denying his motion for suppression of the evidence because the evidence was obtained in violation of his right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and Article 1, Section 18 of the Nevada Constitution. We agree.

## FACTS

On February 21, 1992, Nevada Division of Investigations Officers John Cripps, James Mercado and Curtis Cooley went to Howe's home in Ely to investigate a report that Howe was in possession of a quarter pound of marijuana and might be selling it. Mercado and Cooley went to Howe's front door while Cripps took up a surveillance position approximately half a block from Howe's home. When Mercado and Cooley knocked on Howe's door, Cripps observed a man carrying a white garbage sack leave through the back door, pick up what appeared to be a garbage container, set it back down and re-enter the house. He communicated this information to the two officers at the door via a two-way transmitter radio.

Howe answered the front door, and Cooley and Mercado identified themselves as police officers. Cooley testified that Howe "appeared extremely nervous," was talking quickly and appeared to be perspiring even though it was cool outside. Cooley informed Howe that they had received complaints that Howe was possibly in possession of marijuana. He further told Howe that if he did not have any marijuana, the officers wanted to "clear that situation up."

According to Cooley, Howe stated that he was "not a dope dealer and that he does not do dope." When Cooley asked for permission to enter Howe's residence, Howe responded, "No, no, no." Mercado then informed Cooley that he detected the odor of burning marijuana. Cooley testified that he was initially not in

a position to smell the marijuana smoke but that when he stepped a bit to his right, he too could smell the burning marijuana from inside the residence. Cooley further testified that Mercado "then again advised—then he asked—then we went into the residence."

Once inside the residence, Mercado and Cooley were joined by Cripps and a parole and probation officer. Cooley testified that at some point after their entrance, Howe said words to the effect of, "Yes, if you want to search, go ahead." Nonetheless, in order to "make sure that [Howe was] aware that the consent to search was completely voluntary," Cooley testified that he asked Howe if he would sign a written consent to search form. A tape-recording was made of the interaction, in which Cooley can be heard telling Howe, "[W]e have probable cause to come in this house right now with the smell. Without a warrant, we can be in here. Let me tell you something else: Number one, if you want to cooperate, makes it lots easier. One way or another, we're going to search this house." Cooley testified that he then provided Howe with the consent form, which he read "word by word" to Howe. Cripps testified that while Cooley was advising Howe of the contents of the consent form, Cripps told Howe that Howe had two choices: either "go ahead and give the consent or refuse to consent. If he refused, we would seek or obtain a warrant." Howe signed the consent form.

Mercado testified that the officers entered Howe's residence in order to prevent the destruction of critical evidence. He further testified that once they were inside the residence, Howe told him that he had smoked marijuana prior to the officers' arrival and that he had swallowed the "roach." During the search, Mercado found a cut straw with a powder-like substance residue. He also located a plastic baggie of marijuana under a board underneath the trash can in the back yard.

Mercado conducted a preliminary drug influence examination on Howe to determine whether Howe was under the influence of a controlled substance. This included some rapid-eye tests and a divided-attention test. He also examined the inside of Howe's mouth and found green leafy matter stuck between Howe's teeth. Based on these tests, Mercado arrested Howe for being under the influence of marijuana.

Howe was taken to the Public Safety Building in White Pine County. There, Mercado requested consent to conduct a urine test. Mercado testified that he informed Howe that there were two ways to obtain a urine sample: Howe could either voluntarily submit to a urine sample or Mercado would attempt to obtain a seizure order and "use accepted medical techniques to take the urine sample." Howe then asked him what the medical tech-

niques consisted of and Mercado told him that they would insert a catheter into Howe's penis to extract the urine sample. Howe provided the urine sample, which revealed the presence of marijuana.

In addition to the two charges to which Howe pleaded guilty, Howe was also charged with possession of a controlled substance. After the district court denied his motion to suppress, Howe pleaded guilty to using or being under the influence of a controlled substance and possession of drug paraphernalia.

## LEGAL DISCUSSION

The Fourth Amendment to the United States Constitution forbids unreasonable searches and seizures. U.S. Const. amend. IV. "Warrantless searches and seizures in a home are presumptively unreasonable." Doleman v. State, 107 Nev. 409, 413, 812 P.2d 1287, 1289 (1991) (citing Payton v. New York, 445 U.S. 573, 587 (1980)). "However, warrantless searches are permitted if based upon both probable cause and exigent circumstances." *Id.* Consent also exempts a search from the probable cause and warrant requirements of the Fourth Amendment. Schneckloth v. Bustamonte, 412 U.S. 218 (1973); Davis v. State, 99 Nev. 25, 656 P.2d 855 (1983). When considering our citizens' constitutional right to be secure in their homes and free from unreasonable searches and seizures, "'*this court, on review, must be careful not to permit the exception to swallow the rule.*'" Phillips v. State, 106 Nev. 763, 765-66, 801 P.2d 1363, 1365 (1990) (quoting Nelson v. State, 96 Nev. 363, 368, 609 P.2d 717, 719 (1980)).

The district court found that Howe consented to the officers' entry. However, the officers based their warrantless entry into Howe's home on what they perceived as "exigent circumstances." We conclude that neither consent nor exigent circumstances were present in this case.

"The State bears the burden of proving consent by '[c]lear and persuasive evidence.'" McIntosh v. State, 86 Nev. 133, 136, 466 P.2d 656, 658 (1970) (quoting Thurlow v. State, 81 Nev. 510, 515, 406 P.2d 918, 921 (1965)). The district court found that when the officers came to the residence, Howe clearly repeated "No" but that this response could be interpreted in two ways: as an answer to the questions regarding whether Howe was involved in drug dealing or in response to the questions regarding entry into the house. While stating that "this is a close, marginal type

case," the district court found that Howe's act of stepping aside from the doorway evidenced his consent to the officers' entry.[2]

Stepping away from the doorway, without more, is not clear and persuasive evidence of consent. *See* State v. Summers, 440 So. 2d 911, 913 (La. Ct. App. 1983) (defendant's act of leaving front door open and unattended while he retrieved requested driver's license did not demonstrate his consent to allow officers to enter his home). This is particularly true where the officers have manifested a definite intent to enter Howe's home. Mercado testified that "*[a]s we entered the house,* Mr. Howe stepped out of the way." Also, prior testimony was introduced wherein Mercado stated, "Mr. Howe stepped out of the way as soon as I indicated I smelled marijuana. Mr. Howe knew we were going to go into the house—could go into the house." The law does not require that the occupant of a home physically block the officers' entry in order to indicate lack of consent to their entrance.

Additionally, both Cooley and Mercado testified that Howe consented to the search only after the officers were over the threshold of the door. Moreover, Cooley clearly understood that Howe denied the officers permission to enter. During cross-examination, Cooley testified as follows:

> [Defense Counsel]. [D]id he deny you permission to enter?
> A. He said no. I took that as a no, yes.
> Q. So that would be consistent then with the statement you gave in your affidavit, where you said again that the defendant—let's see, if I can—denied you permission, I think I have he denied you permission?
> A. Yes.

It was only after prodding from the State on re-direct that Cooley testified that when Howe said, "no, no, no," he could have been responding to the accusation that he had been dealing narcotics.

---

[2]The district court stated:

> That physical act, that's a very important physical act under these circumstances. I give it special attention because this is a close, marginal type case. There is evidence here that he stepped aside. He was not lifted aside nor was he pushed aside or moved aside by anyone. He voluntarily got out of the door, let them go in.
> Then he said, "You're free to search." I think that was his position throughout.

The fact that Howe said words to the effect of ,"you're free to search" once the officers had entered should not have been considered in determining whether the officers had consent at the time they entered. The question of consent should be determined by analyzing whether the officers had permission at the time they entered, not by examining which statements or actions subsequent to the entry could support a theory of consent.

Furthermore, the issue is not what Howe could have meant, but what Cooley understood when he entered. Clearly, Cooley understood that he was entering Howe's home without Howe's consent.

During direct examination, Mercado was ambiguous as to whether he understood Howe's negative answer to be in response to the request for entry or to the accusation that he sold drugs. He testified that when Howe answered the door, the officers informed him of the allegation that he was selling narcotics and asked if they could come in to talk about it. Howe stated, "No, no, no I'm not even—I'm unemployed and I'm living on retirement from the Post Office." However, when the prosecutor asked Mercado during cross-examination if he was "aware that the defendant had not given [him] permission to enter," he responded, "Yes."

Indeed, the record indicates that the officers believed their entry was justified, not because they believed they had Howe's consent, but ostensibly because they thought relevant evidence would be destroyed. When asked why the officers went into Howe's residence after hearing "no," Cooley responded:

> Due to the strong odor of marijuana and due to the exigent circumstances that we felt possibly being indicated with the smell of marijuana and possibly more marijuana being inside the residence, the action of somebody coming outside to do something outside, the furtive movement or rapid movement in the house, so forth, all added up to the possibility that evidence could have been destroyed or may be destroyed.

Mercado stated that after the officers smelled marijuana, they stepped into the residence. He further stated that the reason he did so was to prevent critical evidence from being destroyed.

Even the prosecutor appears to have conceded that there was no consent to the entry. During defense counsel's cross-examination, the prosecutor, during an objection, stated, "I don't think there's any evidence that there was any consent prior to Investigator Mercado's entrance into the residence." Moreover, in closing argument, the prosecutor stated that after the officers smelled marijuana, "the issue at [that] point [was] whether or not the officer had exigent circumstances to enter the house *without having a consent.*"

Having determined that Howe did not consent to the officers' entry, we now examine whether the officers were correct that exigent circumstances existed to permit a warrantless entry into Howe's home. A warrantless entry into a home for either a search and seizure of property or a search and seizure of a person is unlawful in the absence of exigent circumstances. Payton v. New York, 445 U.S. 573 (1980). The United States Supreme Court stated in *Payton,* 445 U.S. at 589-90:

The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States,* 365 U.S. 505, 511. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

Exigent circumstances are " 'those circumstances that would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm to the officers and other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.' " Doleman v. State, 107 Nev. 409, 414, 812 P.2d 1287, 1290 (1991) (quoting United States v. McConney, 728 F.2d 1195, 1199 (9th Cir.), *cert. denied,* 469 U.S. 824 (1984)). "[I]n the absence of a showing, by the State, of a *true necessity*—that is, an imminent and substantial threat to life, health, or property—the constitutionally guaranteed right to privacy must prevail." Nelson v. State, 96 Nev. 363, 366, 609 P.2d 717, 719 (1980). The State bears the burden of showing that the exigencies of the situation required intrusion without a warrant. State v. Hardin, 90 Nev. 10, 13, 518 P.2d 151, 153 (1974).

State argues that the exigency in the instant case was that critical evidence would be destroyed. "Mere fear or apprehension alone that evidence will be destroyed will not justify a warrantless entry of a private home." United States v. Perez, 700 F.2d 1232, 1237 (8th Cir. 1983), *cert. denied,* 468 U.S. 1217 (1984). Instead, "[t]here must exist 'specific and articulable facts which, taken together with rational inferences . . . ,' support the warrantless intrusion." United States v. Licata, 761 F.2d 537, 543 (9th Cir. 1985) (quoting United States v. Dugger, 603 F.2d 97, 99 (9th Cir. 1979)).

In United States v. Rubin, 474 F.2d 262 (3d Cir.), *cert. denied,*
414 U.S. 833 (1973), the court formulated a test for determining
whether the possible destruction of evidence justifies a warrant-
less entry.[3] When government agents have probable cause to
believe contraband is present, the following five factors are
relevant in determining whether the exigency of destruction of
evidence exists:

> (1) the degree of urgency involved and the amount of time
> necessary to obtain a warrant; (2) reasonable belief that the
> contraband is about to be removed; (3) the possibility of
> danger to police officers guarding the site of the contraband
> while a search warrant is sought; (4) information indicating
> the possessors of the contraband are aware that the police are
> on their trail; and (5) the ready destructibility of the contra-
> band and the knowledge "that efforts to dispose of narcotics
> and to escape are characteristic behavior of persons engaged
> in the narcotics traffic."

*Rubin,* 474 F.2d at 268-69 (citations omitted) (quoting United
States v. Manning, 448 F.2d 992, 998-99 (2d. Cir. 1971)).

The first and second *Rubin* factors are interrelated in the instant
case. There was no urgency because the officers had no objec-
tively reasonable belief that the marijuana was actually about to
be destroyed.

The officers' "belief that the contraband [was] about to be
removed," was based primarily on their testimony that they
smelled marijuana. *Rubin,* 474 F.2d at 268. We conclude that this
belief was not reasonable. Mercado testified that he and Cooley
were outside Howe's door approximately three minutes before
Mercado detected the odor of burning marijuana, and Cooley
testified that he did not notice it until Mercado mentioned it and
Cooley stepped to the right. Therefore, the odor was not suffi-
ciently strong to create a reasonable belief that Howe was in the
process of burning his supply of marijuana. Rather, the reason-
able inference is that Howe was in the process of smoking
marijuana, which the evidence later obtained corroborated.

Moreover, the officers' ostensible belief that Howe had set fire
to the marijuana and that the officers had to enter the residence in
order to prevent the destruction of this evidence is belied by the
officers' actions. Once they entered the residence, they did not
attempt to locate the burning evidence. Mercado testified that the

---

[3]Wayne LaFave has deemed this case the "most careful treatment of this
point." 3 Wayne LaFave, *Search and Seizure* § 6.5(b), at 342 (3d ed. 1996).

first thing he did when he entered was to try to calm Howe. Cooley testified that upon entry, he attempted to procure Howe's signature on the consent form and went over the form word for word. The facts demonstrate that the officers had no objectively reasonable belief that the marijuana was being destroyed because they failed to act quickly to locate the burning evidence.

Regarding the third *Rubin* factor, there was no evidence that any of the officers would have been in danger had they guarded the site of the contraband while a search warrant was sought. Finally, with respect to the fourth and fifth *Rubin* considerations, it is true that Howe knew that the police officers were "on his trail" after the officers knocked and that marijuana is readily destructible. Nevertheless, as stated, without a reasonable belief that the marijuana was being destroyed, a warrantless entry into Howe's home was unjustified. Moreover, Howe might well have believed that he had successfully hidden his supply of marijuana in the back yard and therefore, had less of an incentive to destroy it. If the officers truly believed that the information they had that led to the investigation and the action at the garbage can in the back yard amounted to probable cause, they should have sought a warrant and then no danger of destruction would have existed, because Howe would have been unaware that he was under suspicion.

Under the factors articulated in *Rubin*, we conclude that the exigent circumstance of imminent destruction of evidence was not present and cannot justify violating Howe's right to privacy in the sanctuary of his home as guaranteed by the Fourth Amendment of the United States Constitution and Article 1, Section 18 of the Nevada Constitution.

We note that other courts addressing circumstances similar to the instant case have refused to find the presence of exigent circumstances where an officer smelled marijuana smoke emanating from within a residence. *See* Johnson v. United States, 333 U.S. 10, 13 (1948) ("[O]dors alone do not authorize a search without warrant."); State v. Dorson, 615 P.2d 740, 746 (Haw. 1980) ("[W]hile the smell of marijuana may establish probable cause, it is not an exigent circumstance that will justify a warrantless entry."); People v. Cohen, 496 N.E.2d 1231, 1235 (Ill. Ct. App. 1986) ("[H]aving probable cause from the odor of burning cannabis will not alone justify an officer to enter and search a private residence."); State v. Schur, 538 P.2d 689, 694 (Kan. 1975) ("Absent a showing of circumstances indicating the likely destruction of evidence, other than defendant's refusal of entry, the observation of a yellow, rolled cigarette in plain view and the

detection of an odor similar to burning marijuana would not authorize a search of the [apartment] without a valid warrant or consent."); *Summers,* 440 So. 2d at 913 (quoting State v. Jones, 358 So. 2d 1257, 1259 (La. 1978)) (warrantless entry unjustified where police smelled marijuana from within a home since "'[t]he constitutional sanctity of a home against unreasonable government intrusion should not depend on the unfounded imagination of police officers, or the potential for fabrication that thereby would result'"). It has been argued that the officers properly arrested Howe without a warrant and therefore had the right to search incident to the arrest. Even if the officers had probable cause to arrest Howe if he had been in a public place, they had no justification to enter his home in order to effect a warrantless arrest. The United States Supreme Court made it very clear in Payton v. New York, 445 U.S. 573 (1980), that the home is a sanctuary, which the government may not invade without a warrant or exigent circumstances. The considerations that courts have recognized for exigent circumstances to justify a home entry for making a warrantless arrest are even more rigid than for warrantless searches. In Dorman v. United States, 435 F.2d 385, 392-93 (D.C. Cir. 1970), the court cited the following material considerations in determining whether a warrantless entry was justified: (1) a grave offense is involved, particularly a crime of violence; (2) "the suspect is reasonably believed to be armed;" (3) the probable cause for believing the suspect committed the crime is clear, even more than required to obtain a warrant; (4) there is a strong reason for believing the suspect is in the premises; (5) there is a "likelihood that the suspect will escape if not quickly apprehended;" and (6) entry is made peaceably if possible. Clearly none of these considerations were present in this case except the suspect's presence in the premises and the peaceable entry. The entry into Howe's home cannot be justified on the basis of the arrest.

Based on the foregoing, we hold that exigent circumstances did not support the warrantless entry into Howe's home.

Having determined that the initial entry was illegal, we next consider whether Howe's subsequent signature on the consent to search form was sufficiently purged of the primary taint of the illegal entry. *See* Wong Sun v. United States, 371 U.S. 471 (1963). We hold that it was not. First, Howe's "consent" was given in close temporal proximity to the illegal entry. Howe told the officers they could search immediately after or perhaps even during the time the officers illegally entered his home. He signed the consent form shortly thereafter. While the officers informed Howe that he was not required to give consent, they clearly

indicated that it would behoove him to do so, as they had the right to be there and were going to search despite his lack of consent. We cannot say that, under the circumstances of this case, the "consent" was sufficiently purged of the taint from the illegal entry. Consequently, the search of Howe's home was also illegal. We conclude that the evidence seized following the officers' illegal entry must be suppressed as fruit of the illegal entry. *See generally* Wong Sun v. United States, 371 U.S. 471 (1963).[4] We therefore reverse the judgment of conviction.[5]

ROSE, J., concurs.

STEFFEN, C. J., with whom SPRINGER, J., agrees, concurring:

I concur in the result reached by the majority but do not subscribe to the view that police officers who are exposed to the smell of drugs, in this case marijuana, do not have probable cause to make a warrantless arrest and then a search incident to the arrest. *See* State v. Luchetti, 87 Nev. 343, 486 P.2d 1189 (1971) (citing Chimel v. California, 395 U.S. 752 (1969)). Indeed, officers who approach a suspect at the door of his house, and are able to smell the odor of an illegal controlled substance, certainly have probable cause to believe that a felony is occurring in their presence, such as to justify a warrantless arrest. *Id.;* State v. Pool, 652 P.2d 254 (N.M. Ct. App. 1982) (holding warrantless entry and subsequent arrest valid where officer smelled odor of burning marijuana and thus had good faith belief that defendant, who closed door upon seeing officer, would immediately attempt to dispose of the contraband); *see also* United States v. Botero, 589 F.2d 430 (9th Cir.) (where officers followed recipient of bags of cocaine to apartment and placed him under warrantless arrest in the doorway as he opened the door, court held that arrest would have been valid if made after police entry into apartment because justified by exigent circumstances, i.e., the imminent prospect of contraband being removed or destroyed), *cert. denied,* 441 U.S. 944 (1979).

Moreover, I disagree with the majority on the issue of exigent circumstances. Even under the five-factor test adopted in United States v. Rubin, 474 F.2d 262 (3d Cir.), *cert. denied,* 414 U.S. 833 (1973), and applied by the majority, I believe that exigent circumstances are demonstrated here.

---

[4]In light of this decision, we need not consider Howe's additional contentions that the urine sample was illegally obtained and that Howe's incriminating statements were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and should have been suppressed.

[5]THE HONORABLE CLIFF YOUNG, Justice, voluntarily recused himself from participation in the decision of this appeal.

First, the majority seems to minimize the criminality involved in the possession of a quarter pound of marijuana by declaring that the possibility of Howe disposing of it while the officers sought a warrant does not demonstrate "urgency." Of course, under Nevada law, the described offense is a felony. It is therefore a serious crime and the officers were under a duty not to ignore it.

Second, the majority dismisses as unreasonable the officers' belief that the evidence would be destroyed. I suggest that the majority's assessment is optimistic to the extreme. When Howe opened the front door, Cooley and Mercado identified themselves as police officers. The officers also informed Howe that they had received complaints against Howe for possibly possessing marijuana. Mercado told Cooley that he detected the odor of burning marijuana. Under these circumstances, I suggest that it would have been irresponsible for the officers to have assumed that Howe would have left the marijuana untouched and available for seizure after they obtained a warrant.

Moreover, I also believe that the most logical belief concerning the burning marijuana would have been that Howe had been smoking the substance and placed the burning material in an ash tray or some other receptacle while he went to the front door. If the officers had left for a warrant, or posted one of them outside while the other left for the warrant, it is unreasonable to assume that Howe would not destroy the contraband during the officers' absence.

Third, although it would appear that there would have been no danger to one of the officers remaining outside Howe's residence while the other officer left to secure a warrant, there would have been an obvious and extreme danger that the contraband would be destroyed during the wait.[1] If, however, the warrantless arrest is deemed valid, then a limited search incident to the arrest would have been justified to assure the officers' safety.

Finally, the majority concludes that the fourth and fifth *Rubin* factors are satisfied, but nevertheless concludes that the possible destruction of a small quantity of marijuana, without more, does not justify a warrantless entry into a person's home.[2] I have great

[1] Given the majority's conclusion that Howe's warrantless arrest was unjustified, it would also be necessary to conclude that the officer who remained at the residence would have had no right to either enter Howe's residence or order Howe not to move from the open doorway while the other officer went for a warrant.

[2] It will be recalled, as noted in the majority opinion, that factors 4 and 5 are: (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

difficulty with this court undermining felony classifications determined by the legislative branch of government. In the state of Nevada, our citizen-representatives have determined that possession of a small quantity of marijuana is a felony. It is not the prerogative of this court to countermand the public policy of this State and conclude that the crime implicated in this case is not sufficiently serious for officers to effectively deal with in the absence of a warrant. The fact of the matter is that if the officers had left Howe in order to obtain a warrant, all traces of the marijuana would have been gone when they returned. Thus, the majority has effectively declared that despite the fact that the possession and use of marijuana in Nevada is a felony, we as a court will not countenance the warrantless arrest of persons who commit these crimes in the immediate presence of a police officer.

Notwithstanding my concern that we not proceed too far in our rulings as to what may or may not be done under Fourth Amendment jurisprudence regarding the type of situation that prompted the entry by the officers in the instant case, under the current state of the law, the officers could not conduct the extensive search that occurred here. A search incident to a lawful arrest could not have justified a warrantless search beyond the immediate vicinity of the arrest unless there was consent or exigent circumstances. The majority is correct in concluding that neither existed in the present case.[3]

With the exception of the points of concern noted above, I concur in the majority's opinion.

---

[3]I note, however, that the officers would have been justified in making a search for additional *persons* based upon Officer Cripps' observation of a man temporarily exiting and re-entering the house at the rear while Officers Cooley and Mercado were knocking on the front door. At the time when the officers entered Howe's house, they could not have known whether Howe was the man who had been seen by Cripps at the rear of the house.