THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* EDWARD M. WAHLEN, Defendant-Appellee.

Fourth District   No. 4—82—0325

Opinion filed December 13, 1982.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Michael W. Hogan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Paul R. Welch, of Costigan & Wollrab, of Bloomington, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

The State appeals under Supreme Court Rule 604(a)(1) (87 Ill. 2d R. 604(a)(1)) an order of the circuit court of McLean County which suppressed evidence.

The background may be gleaned from the discovery information in the file. All of the events occurred at a dormitory at Illinois State University in the very early morning hours of September 20, 1981. Two students, sharing a room on the 10th floor, awakened to find an individual rifling their possessions. Upon being accosted by them, he fled. The occupants of the room were able to obtain a good view of him since the lights were apparently on. They discovered that a digital pocket watch belonging to one of them was missing and they thereupon notified "the front desk." Police reports in the file indicate that the campus police received a call concerning a possible burglary at 4:01 a.m.

Police officers arrived at the dormitory and while they were taking a report from the occupants of the room, an individual matching the description of the person who had been going through their property passed by in the hallway. The officers thereupon detained him (the evidence being in conflict as to whether they arrested him at that time) and determined that he was also a student and resided on the fourth floor of the same dormitory.

The events which then followed are found in the record developed at the suppression hearing. Two officers, who were present on the 10th floor, escorted the suspect, who is the defendant in this case, to the fourth floor and caused him to open his room. His roommate was asleep in the room at the time. The two officers and the defendant entered the room and the officers ordered the defendant, who was wearing only a pair of shorts, to get dressed in order to go to the campus police headquarters.

The roommate was awakened and told that the defendant had been arrested and was being taken to headquarters. Meanwhile, the two officers present in the dormitory had been in radio communication with their supervisor who instructed them to obtain permission to search defendant's room; otherwise, to indicate that the room would be "sealed" until a search warrant could be obtained. September 20, 1981, was a Sunday. These instructions were broadcast to the handheld radios of the officers and were loud enough for everyone present, the officers, the defendant, his roommate, and certain dormitory officials, to hear. The officers present repeated the instructions to the defendant and his roommate and a short time later the supervising

corporal arrived and likewise repeated them. Both the roommate and the defendant were told that they might remove such books and personal items as they might need, but that the room was to be sealed until a search warrant could be obtained; the alternative was consent to search.

The roommate, who testified that he had arrived at the room at about 2 a.m. and had slept until awakened as above described, gave his oral consent to search. This was followed almost immediately by an oral consent from the defendant. The search was executed on the spot and a digital pocket watch was discovered in defendant's side of the room. There was also evidence that the university police ordinarily require written consent on forms furnished by them for warrantless consensual searches, but that all the transactions in the present case were oral.

The defendant was then removed from the dormitory, booked, and afterwards indicted by a grand jury for burglary and theft of property less than $150 in value. Thereafter, the instant motion to suppress the seized evidence was filed, the basis of which was that the consent to search had been coerced; the trial court allowed the motion and this appeal by the State followed.

Although the defendant was apparently arrested only moments before the party arrived at the fourth floor room, no contention is made by the State that the search was incident to a lawful arrest; rather, the State relies on the oral consents of the defendant and his roommate, and argues that no coercion was present: (1) that the defendant was going to be jailed, so deprivation of access to his room was a moot problem, and (2) as to the roommate, "who could easily turn to the hall manager and others present to help him find substitute sleeping arrangements," there was no deprivation whatever.

Where a warrantless search is executed pursuant to consent, the consent must be proved by clear and positive testimony and it must be established that there was no duress or coercion, actual or implied. The prosecution must show a consent that is unequivocal and specific, freely and intelligently given. Courts will indulge every reasonable presumption against a waiver of fundamental constitutional rights. (*People v. Haskell* (1968), 41 Ill. 2d 25, 241 N.E.2d 430, *overruled on other grounds by People v. Nunn* (1973), 55 Ill. 2d 344, 304 N.E.2d 81, *cert. denied* (1974), 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608.) The voluntary nature of consent depends, not on any single criterion, but on all circumstances surrounding the giving of the consent. *People v. Posey* (1981), 99 Ill. App. 3d 943, 426 N.E.2d 209.

 In applying these principles to the instant case, it is our opin-

ion that coercion was clearly present. We know of no authority in the police to "seal" a room until a warrant may be obtained (if it may be obtained at all), and the time element here is not insignificant. It will be remembered that the events described occurred between 4 and 4:30 a.m. on a Sunday morning and there was no suggestion that a warrant would even be sought until Monday morning, more than 24 hours later. Accommodations would be needed for the roommate for the remainder of the night in question, all day Sunday, and Sunday night, with a portion of Monday morning thrown in for good measure. The State's argument that such accommodations could be "easily" obtained is fatuous, to say the least. Not one shred of evidence was introduced to show how "easily" such alternative arrangements could be made, or even to show that any other arrangements, easy or difficult, could be made. More importantly, we have a college student, innocent of any offense, asleep in his own room for two hours, awakened at 4 a.m. with three police officers in that room demanding in substance "consent or get out." A more crystalline case of coercion can scarcely be imagined.

As to the defendant, the State's Attorney established on the record that he had been arrested and then put the matter of his arrangements euphemistically: "So arrangements for his room and board were taken care of so to speak." We fail to understand how the fact that one might be incarcerated and thus have no immediate use for his living quarters can grant authority to the police to do something not sanctioned by law. The threat, and its consequences, were there, no matter what the disposition of the defendant might be. Although it is not necessary that the State show that the consenting party was advised of his rights secured by the fourth amendment, the failure to do so is a factor bearing on the understanding nature of the consent. (*Haskell; Posey.*) In the instant case by telling defendant and his roommate that if they failed to consent, they would be forced to leave their room until a search warrant could be obtained, went beyond not telling defendant and his roommate that they need not consent. This must be considered as a factor together with the other criteria which, when taken as a whole, show that defendant and his roommate were coerced into consenting.

■ A trial court's determination on the voluntariness of a consent is to be accepted on review unless its findings are clearly unreasonable. Where the trial court finds, under the totality of circumstances, that a consent was not voluntary or free from coercion and the finding is clearly reasonable, it must not be disturbed. (*People v. Ford* (1980), 83 Ill. App. 3d 57; 403 N.E.2d 512.) In the case at bar

the trial court, after considering the totality of circumstances, found that defendant and his roommate had not voluntarily consented and that their consent was not free from coercion. On the record this finding was not unreasonable and should not be disturbed.

The order of suppression entered by the circuit court of McLean County is affirmed.

Affirmed.

TRAPP and LEWIS, JJ., concur.