THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LORNA EDEN, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BROOKE JENKINS, Defendant-Appellee.

Fourth District   Nos. 4—92—0894, 4—92—0896 cons.

Opinion filed June 24, 1993.

278

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Carey J. Luckman, of Pontiac, for appellee Lorna Eden.

No brief filed for appellee Brooke Jenkins.

JUSTICE KNECHT delivered the opinion of the court:

The State appeals from the grant of defendants' motions to suppress evidence seized from their home. The Livingston County trial judge granted the motions because there were no exigent circumstances to warrant the police officers' unauthorized entry into defendants' home. The State contends this ruling must be reversed. We disagree and affirm.

I. Facts

On February 20, 1992, defendant Lorna Kay Eden was charged with contributing to the delinquency of a child, a Class A misdemeanor (Ill. Rev. Stat. 1991, ch. 23, par. 2361a). On the same day, defendant Brooke Jenkins was charged with unlawful possession of alcohol by a minor, charged as a Class A misdemeanor, and unlawful consumption of alcohol by a minor, a Class C misdemeanor. Ill. Rev. Stat. 1991, ch. 43, pars. 131(a), 134a.

On April 30, 1992, each defendant filed a motion to quash her arrest and suppress the evidence obtained against her. At the hearing in June 1992, Mike Gray, a City of Pontiac police officer, testified that shortly after midnight on December 20, 1991, he received a call at the Pontiac police station. The anonymous caller reported a large, loud, underage drinking party at 511 South Vermilion (511) in Pontiac, Illinois. The loud party was disturbing the caller's sleep.

When Gray received the call, only he and Officer Jeffrey A. Muir were available to respond. Because they had previously experienced large numbers of people at such gatherings, Gray sought assistance from the Livingston County sheriff's department to investigate the report. Sheriff's deputies Jack Arnold, Ron Hoegger, and Ken White responded to the call for assistance.

Before going to 511, the officers met briefly at the police station. About 15 minutes elapsed from the time Gray received the call until the officers arrived at 511. Gray testified he did not necessarily have a sufficient number of officers to control the house because the house was large and he did not know how many people were inside. Gray and Arnold approached the front door while the other officers were positioned around the house to cover all exits. Gray made no attempt to contact the State's Attorney to obtain a search warrant.

Gray testified he and Arnold walked onto the front porch. There were several windows in the front of the residence, including the window in the front door. There was a bay window to the right of the front door. According to Gray, from the front porch he could see the entryway of 511, part of the living room, and a portion of the kitchen.

By looking through the bay window, Gray saw three or four people playing cards at the kitchen table. He also saw a couple of people on the couch in the living room and a couple of people walking around. In total, according to Gray, he observed 8 to 10 people in the home. He did not see Eden. However, he saw a man named

Bill Lewandowski and defendant Jenkins. He knew them from prior contacts. Each had alcohol in his or her hands. Lewandowski had a clear plastic cup containing an amber liquid that looked like beer. Gray conceded that apple or pineapple juice could also fit the description of the liquid. Gray also observed some beer cans and beer bottles. As he looked in the bay window to the right of the front door, he saw cups and empty Budweiser cans sitting on a table.

Gray informed the other officers he had seen minors with alcohol in their possession in the residence and he was going to knock on the door. When Gray knocked, defendant Jenkins came to the door and pulled the thin lace curtain to the side to see who it was. Gray saw what appeared to be a wine cooler in Jenkins' hand. It had a label and was shaped like a wine cooler. Jenkins reportedly looked at Gray and Arnold, released the curtain, and fled backward. Gray could see her run. According to Gray, there was a lot of scuffling and he could see people inside the house running around.

Gray and Arnold opened the front door and entered the home. They did not inquire whether they could enter. Gray testified he was not aware of any felony or crime of violence being committed before they decided to enter the residence uninvited. The officers began to secure people. Gray and Arnold summoned the officers who had been surrounding the home. Additional officers arrived several minutes later to help transport people. According to Gray, before entering the residence, the officers did not contact the State's Attorney to obtain a warrant because they did not feel a warrant was necessary.

Gray did not know whether they confiscated any evidence. The evidence consisted mostly of empty alcohol containers which were all over the house. They photographed the evidence. Eden and Jenkins were among those arrested; Eden was not taken to the police station because she was not required to take a breath test since she was an adult. The remaining individuals arrested are not involved in this appeal. While arresting the individuals, Gray and the other officers made observations, including how various individuals' breath smelled. Gray testified that when he went to 511, he knew Eden was the owner or the tenant. Before he entered the home, he did not know whether other adults were present in the residence.

Muir testified he parked his squad car in the alley and approached the back door area of 511. After being told by Gray that he had seen minors drinking, Muir walked down the sidewalk that led directly to the rear entry of 511. He stood next to the back

door. The door had a window from which he could see a stairwell, the kitchen area, and the basement.

Muir saw six people going up and down the stairs and a large keg of what he presumed was beer. There were a few people in the basement and people in the kitchen. He saw someone taking substance from the keg. He saw several adults and several minors. He identified two of the individuals and knew they were minors because of previous contacts he had with them. After observing these individuals, Muir radioed the other officers around the residence and told them there was a keg in the basement and he saw minors consuming alcohol. After Gray advised the other officers that he had entered the residence, Muir and additional officers entered the residence from the rear entry.

Before entering, Muir saw a few beer cans in the kitchen. The other alcohol Muir reportedly observed was the liquid in clear plastic cups, which he described as an amber or yellowish color. Muir conceded it was possible the liquid was pineapple juice, apple juice, or cream soda. Muir also saw cans and bottles in the backyard. He did not know whether they were from the December 20 gathering. Upon entering, Muir checked the keg. It contained beer. He also saw several clear plastic cups containing beer, and beer bottles and cans throughout the entire residence. Muir only entered 511 after he was told the other officers were entering. According to Gray, no owner, renter, or occupant of 511 had invited Muir, or any other officer, into the residence.

Eden testified she lived at 511 and was purchasing the residence through its owner. According to Eden, on December 20 and December 21, 1991, Jenkins, Donna Hoegger, and Troy Krueger also resided at 511. Eden did not give the officers permission to enter her home that night. When they arrived, she was upstairs in bed sleeping. She was awakened and told the police had entered her home. Defendant Jenkins testified that on December 20 and 21, 1991, she resided at 511. She did not authorize the officers' entry into the home.

The trial judge initially denied defendants' motions to quash their arrests and to suppress the evidence. The judge reasoned the officers likely could not have obtained a search warrant after the anonymous phone call and all evidence would have been destroyed if they had gone to get a warrant after Gray knocked on the door of 511 and Jenkins fled. The judge concluded these facts constituted exigent circumstances which justified the officers' uninvited entry into 511.

After a hearing on defendants' motions for reconsideration, the trial judge quashed defendants' arrests and suppressed the evidence against them. This appeal followed.

## II. ANALYSIS

The State contends because the police acted reasonably and under exigent circumstances when they entered defendants' home without a warrant, the trial judge erred by granting defendants' motions to quash arrest and suppress evidence. The facts are not in dispute and credibility of the witnesses is not an issue. Whether exigent circumstances were present is a legal question which we review *de novo. People v. Foskey* (1990), 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197; *People v. Abney* (1980), 81 Ill. 2d 159, 168, 407 N.E.2d 543, 547; *People v. Bosse* (1992), 238 Ill. App. 3d 1008, 1009, 605 N.E.2d 593, 594.

■ Generally, if law enforcement officials have no warrant, a nonconsensual entry into a defendant's home is improper unless exigent circumstances exist. (*Payton v. New York* (1980), 445 U.S. 573, 583, 63 L. Ed. 2d 639, 648-49, 100 S. Ct. 1371, 1378; *Abney,* 81 Ill. 2d at 168, 407 N.E.2d at 547.) To determine whether exigent circumstances exist, each case is evaluated by considering what the police knew at the time they acted and assessing whether their actions were reasonable under those circumstances. *People v. Yates* (1983), 98 Ill. 2d 502, 515, 456 N.E.2d 1369, 1376.

Although not exhaustive, the Illinois Supreme Court outlined the following factors to consider when evaluating whether exigent circumstances existed: (1) whether the offense under investigation was recently committed; (2) whether there was deliberate or unjustifiable delay by the police during which they could have obtained a warrant; (3) the gravity of the offense, particularly whether it involves violence; (4) whether the suspect is reasonably believed to be armed; (5) whether the police were acting on a clear showing of probable cause; (6) whether it was likely the suspect would escape if not apprehended quickly; (7) whether there was a strong reason to believe the suspect was on the premises; and (8) whether the nonconsensual entry by the police was, nevertheless, peaceable. *Foskey,* 136 Ill. 2d at 75, 554 N.E.2d at 197, citing *People v. White* (1987), 117 Ill. 2d 194, 216-17, 512 N.E.2d 677, 685.

The State contends the trial judge erroneously concluded that because probable cause existed only for a misdemeanor offense and not a felony offense, exigent circumstances did not exist to justify the officers' nonconsensual entry into defendants' home. The trial

judge relied on a second district opinion which concluded the odor of cannabis detected by a police officer was insufficient to authorize entry and search of defendant's residence without a warrant. *People v. Cohen* (1986), 146 Ill. App. 3d 618, 624, 496 N.E.2d 1231, 1235.

The trial judge in this case observed the *Cohen* court had concluded unauthorized entry into a home where the police have probable cause to believe a *misdemeanor* offense, and not a *felony*, was being committed did not represent an exigent circumstance. The *Cohen* court also concluded, however, the evidence indicated the officer travelled through the house, to a remote bedroom, not to arrest defendant for a suspected offense, but to search for evidence of that offense or a different offense. It also considered additional factors which could indicate a compelling basis for entering a person's home without a warrant. *Cohen*, 146 Ill. App. 3d at 626-27, 496 N.E.2d at 1236-37.

The trial judge in this case reviewed the facts presented and concluded, under *Cohen*, the facts did not indicate exigent circumstances existed. The trial judge's observations do not indicate he relied solely on the fact the offenses which the officers observed being committed were misdemeanors and not felonies. However, the State's primary argument on appeal is that we should not affirm the motions to quash and to suppress the evidence merely because the offenses the officers observed being committed were misdemeanors and not felonies.

The State notes this district has not limited the exigent circumstances exception to instances in which defendant is suspected of committing a felony. It contends we should not adopt such a rule. We need not address that question since we conclude exigent circumstances did not exist to justify the officers' unauthorized entry into defendants' home.

In *Welsh v. Wisconsin* (1984), 466 U.S. 740, 80 L. Ed. 2d 732, 104 S. Ct. 2091, the United States Supreme Court considered whether the fourth amendment prohibited the police from making a warrantless night entry of a person's home in order to arrest him for a nonjailable traffic offense. A witness to defendant's alleged erratic driving reported defendant's actions to the police. The witness reported that defendant was either very ill or very inebriated. Defendant had abandoned his vehicle a few blocks from his home. The police learned defendant's address by checking the vehicle registration and they proceeded to defendant's home. When his stepdaughter answered the door, the police entered and arrested

defendant for the offense of driving while intoxicated. Under Wisconsin law, this offense was a noncriminal, civil forfeiture offense for which no imprisonment was possible. *Welsh*, 466 U.S. at 742-43, 80 L. Ed. 2d at 738-39, 104 S. Ct. at 2093-94.

The supreme court of Wisconsin had identified three factors which established exigent circumstances existed to justify the officers' entry into defendant's home without a warrant: the need for hot pursuit of a suspect; the need to prevent physical harm to the offender and the public; and the need to prevent destruction of evidence, *i.e.*, defendant's blood-alcohol level. *Welsh*, 466 U.S. at 747-48, 80 L. Ed. 2d at 742, 104 S. Ct. at 2096.

Because defendant had already abandoned his vehicle and returned home, the concern for public safety was not warranted. Nor had the officers been in hot pursuit of defendant. The Court concluded the State's only interest was in obtaining defendant's blood-alcohol level to charge him with the nonjailable offense of driving while intoxicated. An additional important factor is the gravity of the underlying offense for which defendant is being arrested. In this case, the Court concluded, the State's interest did not present a compelling need to enter defendant's home without a warrant. *Welsh*, 466 U.S. at 753-54, 80 L. Ed. 2d at 745-46, 104 S. Ct. at 2099-2100.

The Court stated:

> "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome *the presumption of unreasonableness that attaches to all warrantless home entries.* [Citation.] When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut ***." (Emphasis added.) (*Welsh*, 466 U.S. at 750, 80 L. Ed. 2d at 743, 104 S. Ct. at 2098.)

The State directs us to a footnote in *Welsh* which indicated the Court was not considering whether the fourth amendment may impose an absolute ban on warrantless arrests for certain minor offenses. *Welsh*, 466 U.S. at 749 n.11, 80 L. Ed. 2d at 743 n.11, 104 S. Ct. at 2097 n.11.

The next footnote reveals the Court would view with extreme caution any warrantless entry into a home when the offense for which defendant is being sought is a misdemeanor. The Court noted that even the dissenters in *Payton*, in which the Court prohibited warrantless home arrests absent probable cause and exigent circumstances, recognized the importance of limiting such arrests to those

involving felony offenses. *Welsh*, 466 U.S. at 750 n.12, 80 L. Ed. 2d at 743 n.12, 104 S. Ct. at 2098 n.12.

The State distinguishes *Welsh* by noting the offense there was a noncriminal, civil forfeiture offense for which no imprisonment was possible and it was not committed in the presence of police. In Illinois, only business offenses and petty offenses are nonjailable. Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3(c)(5).

That officers observed what they suspected were misdemeanor offenses taking place does not automatically justify warrantless entry into a person's home. Considering the relevant factors (see, *e.g.*, *White*, 117 Ill. 2d 194, 512 N.E.2d 677), there was no compelling reason the officers could not have obtained a search warrant before entering defendants' home.

The officers were not in hot pursuit of an armed felon. Applying the *White* factors, (1) the offense report being investigated was recently committed and/or ongoing; (2) no deliberate delay by officers occurred; (3) the suspected infractions cannot be described as grave and did not involve violence; (4) no one was reported to be armed; (5) the police do not appear to have had probable cause until they arrived at the house and saw minors holding what they suspected to be alcohol; and (6) the likelihood that persons in the house would escape was nil.

The officers had 511 surrounded and were stationed at each exit of the home. Those in the house did not even know the officers were present until Gray knocked on the door. After the officers observed the illegal consumption of alcohol, an officer could have gone to obtain a search warrant before defendants were summoned to the door. The additional officers could have remained to question persons if they attempted to depart from 511. While questioning them, the officers would have been able to observe each person's actions and smell his or her breath to determine whether he or she had consumed alcohol. Moreover, as there was no testimony the officers observed a loud party when they arrived, we can only assume the anonymous neighbor was no longer being disturbed.

Although the officers' entry was peaceful, such an action under similar circumstances may place at risk the lives of police officers, those in the residence, and innocent bystanders. Muir entered the rear door, apparently unannounced, after Gray entered the front door. Such an action could yield a dangerous response from a resident of a home. No factor indicated the officers' warrantless entry into defendants' home was a reasonable response to the officers' observations that as few as two, and as many as several, minors were

consuming alcohol. The officers' entry could have escalated into a dangerous situation.

The State also directs us to the Illinois Supreme Court ruling in *People v. Eichelberger* (1982), 91 Ill. 2d 359, 369, 438 N.E.2d 140, 145, in which the court concluded exigent circumstances existed where the officers reasonably believed a felony was being committed in their presence. The officers' warrantless entry into defendant's hotel room was justified.

An officer had been informed that defendant was suspected of selling contraband from a particular hotel. The officer stationed himself in a room next to defendant. He saw defendant and another individual enter defendant's room and heard defendant say he had some "grams" the person could have and he expected to get some "coke" in a few days. The door to defendant's room was open (the degree to which it was open was not clearly established). The officer gave an arrest signal and defendant was arrested and searched. *Eichelberger*, 91 Ill. 2d at 363-64, 438 N.E.2d at 142.

Defendant in *Eichelberger* was allegedly in the process of committing a felony offense which the officers' actions interrupted. Although the person to whom Eichelberger was allegedly selling contraband was a police informant, interrupting defendant's actions at that point kept defendant from selling contraband to anyone else. In the present case, defendants' suspected offenses were of a less serious magnitude, misdemeanors. In addition, although the suspected underage consumption was continuing, as minors were allegedly continuing to drink, their actions had already amounted to a completed offense. The officers' intercession did not stop a crime from being committed.

The *Eichelberger* court also noted it may have been difficult to readily obtain a warrant because the alleged offense occurred in a small town on a Sunday morning. (*Eichelberger*, 91 Ill. 2d at 370, 438 N.E.2d at 145.) In this case, Gray testified the officers did not feel a warrant was necessary. There was no indication obtaining a warrant would have been difficult.

The facts and circumstances reflected in the second district opinion in *People v. Olson* (1983), 112 Ill. App. 3d 20, 21, 444 N.E.2d 1147, 1148, are similar to those in this case. In *Olson*, police officers were directed to defendant's home shortly after midnight to investigate a report of a loud party. From the front porch, officers could observe certain activities occurring inside the home. An officer knocked on the front door. While waiting for a response, the officers saw a group of young people through the window. A

party was apparently in progress and the participants seemed to be under 21 years old. The participants were seen drinking or carrying beer. After one of the youths responded to the knock, the officers observed a flurry of activity and entered the dwelling.

The *Olson* court concluded the nonconsensual, warrantless entry of the home to make an arrest was not permissible. It reasoned prompt police action was not necessary to protect the community or persons within the house. It further reasoned the delay attributed to obtaining a warrant would not have impeded an investigation or permitted a criminal to escape. It also noted the potential destruction of evidence, alone, was not sufficient to justify exigent circumstances. Finally, entry was improper because there was no evidence weapons were present in the home or violence was occurring, and the offense for which the officers wanted to arrest defendants was minor. *Olson*, 112 Ill. App. 3d at 24, 444 N.E.2d at 1150.

As in *Olson*, in this case, defendants' actions were not threatening the safety of the community. Although consuming alcohol poses potential health and safety risks, these risks would not have been enhanced significantly in the time it may have taken the officers to obtain a warrant. Also as in *Olson*, there was no evidence weapons were present in the home or that violence was occurring.

The State relied on a potential destruction of evidence argument to justify the officers' action. However, as the *Olson* court noted, destruction of evidence, standing alone, is not sufficient to justify warrantless entry of a home. (*People v. Harrell* (1992), 226 Ill. App. 3d 866, 877, 589 N.E.2d 943, 950; *People v. Kelley* (1982), 104 Ill. App. 3d 51, 54, 432 N.E.2d 630, 632.) Moreover, defendants could not have entirely disposed of the beer cans, beer bottles, and keg while an officer sought a search warrant and the other officers remained stationed around defendants' home.

The *Olson* court also noted probable cause was not clearly established because the officers made no attempt to determine whether adults were present in the home who could have authorized consumption of alcohol by the minors. (*Olson*, 112 Ill. App. 3d at 24, 444 N.E.2d at 1150.) Because probable cause was not at issue at the trial level, we need not address it on review. We note, however, neither Gray's nor Muir's testimony indicated they considered whether adults were in the home who had the authority to permit consumption of alcohol by the minors as the law irrespective of its wisdom permits. Ill. Rev. Stat. 1991, ch. 43, par. 134a.

Neither do other cases relied on by the State compel reversal of the order quashing defendants' arrest and suppressing the evidence against

them. The State correctly notes the fact the offense involved in *People v. Hart* (1980), 88 Ill. App. 3d 484, 486, 410 N.E.2d 633, 634, was a misdemeanor was not determinative. However, the facts there are distinguishable. In *Hart*, defendant was sought for a Class A misdemeanor, reckless conduct involving the firing of a gun from a vehicle. Someone fired four shots through the bedroom window of a woman who had been involved in a vehicular accident in which defendant's son had been killed. Witnesses testified the shots were fired from a black or dark-colored Trans Am or Camaro; other witnesses provided information that defendant's son had purchased a black Trans Am about two weeks before his death. The car was found in defendant's driveway and its hood was warm to the touch.

Due to the nature of the crime, the officers had reason to believe defendant was armed and dangerous. The offense had been committed nearly an hour before the officers arrived at defendant's home. The *Hart* court determined exigent circumstances existed to justify a warrantless arrest. Moreover, it appears from the facts that defendant consented in *Hart* to the officers' entry into his home. (*Hart*, 88 Ill. App. 3d at 487, 410 N.E.2d at 634.) The *Hart* court also rejected the defendant's argument that there was no probable cause to permit a warrantless entry.

In *People v. Hoffstetter* (1984), 128 Ill. App. 3d 401, 407, 470 N.E.2d 1247, 1251, the fifth district concluded that although the officers' initial entry was lawful, their subsequent warrantless intrusion into living quarters at the rear of the store—based only on what they thought was the smell of cannabis—was unjustified. The court noted the odor of marijuana would only suggest the commission of a misdemeanor and would not permit warrantless entry. However, material facts relevant to a probable cause finding were also in dispute. We need not rely on this fifth district ruling to conclude the suppression orders here were proper.

*People v. Lagle* (1990), 200 Ill. App. 3d 948, 955, 558 N.E.2d 514, 519, involved a nonconsensual entry into defendant's home based on the offense of driving under the influence of alcohol (DUI). The Fifth District Appellate Court upheld the trial judge's order granting defendant's motion to suppress. However, the evidence was suppressed apparently because the trial judge credited defendant's testimony as more believable than the State trooper's.

Had the officer's testimony been more believable, the exigent circumstances factors involved in *Lagle* were more persuasive than those in this case. The officer had reportedly been in hot pursuit of defendant for DUI. The court indicated this is viewed as a serious offense in Illi-

nois. Because of the offense, there was a very real possibility of destruction of the evidence, *i.e.*, the alcohol in defendant's blood would have dissipated if the officers sought a warrant before arresting him. *Lagle*, 200 Ill. App. 3d at 954, 558 N.E.2d at 519.

■ In this case, the persons in the residence could not have destroyed the evidence against them. The officers could have continued to surround the house until a warrant was obtained. The persons in the house had not attempted to flee from the officers because they were not even aware of the officers' presence until Gray knocked on the door. In contrast, the gravity of the crime and the circumstances under which the defendant entered his home under the hot pursuit of the officers distinguish *Lagle* from the facts and circumstances in this case.

Exigent circumstances did not exist to justify the officers' nonconsensual entry into defendants' home. The evidence against defendants was properly suppressed and their arrests quashed.

■ The State finally argues even if the nonconsensual entry into defendants' home was a violation of the fourth amendment, the trial court was not required to suppress the officers' observations of defendants, statements made by defendants, and the results of the breathalyzer tests—the evidence obtained after defendants were removed from the home—based on illegal entry *if* police had probable cause to arrest defendants. The State relies on *New York v. Harris* (1990), 495 U.S. 14, 109 L. Ed. 2d 13, 110 S. Ct. 1640, which held the exclusionary rule does not bar the State's use of a statement made by defendant outside his home where the police had probable cause to arrest the suspect, even though the statement was taken after a nonconsensual, warrantless entry into defendant's home.

However, we need not consider the merits of this argument because the State failed to raise this issue at the trial level. *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129.

The trial judge properly granted defendants' motions to quash arrest and to suppress the evidence against them. Because the trial judge was not provided an opportunity to address the question whether the evidence obtained *after* defendants were removed from the home should be admissible, this argument was waived for review.

Affirmed.

STEIGMANN, P.J., and LUND, J., concur.