THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES McARTHUR, Defendant-Appellee.

Fourth District    No. 5—97—0695

Opinion filed May 7, 1999.

Timothy J. Willis, State's Attorney, of Sullivan (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Jeff Justice, of Campbell & Robinson, of Decatur, for appellee.

JUSTICE COOK delivered the opinion of the court:

In May 1997, defendant Charles McArthur was charged by infor-

mation with two counts of unlawful possession of drug paraphernalia and one count of unlawful possession of a substance containing less than 2.5 grams of cannabis. 720 ILCS 600/3.5(a); 550/4(a) (West 1996). Defendant filed a motion to suppress the evidence (a cannabis smoking pipe, a "one-hitter" box, and cannabis) found at his residence during the execution of a valid search warrant, arguing that his fourth amendment rights were violated because the police secured his residence and prevented him from reentering his residence alone during the two hours it took to obtain the search warrant. The trial court granted defendant's motion to suppress. The State appeals pursuant to Supreme Court Rule 604(a)(1). 145 Ill. 2d R. 604(a)(1). We affirm.

At the August 1997 hearing on defendant's motion to suppress, John Love, Sullivan assistant chief of police, testified that on the afternoon of April 2, 1997, at the request of defendant's wife, Tera McArthur, he and Officer Skidis accompanied her to a trailer where she and defendant resided, while she removed her property from the residence. After she finished removing her belongings, Tera told Love, who was standing on the porch, that defendant had "pot" in the trailer under the couch. Love knocked on the door and, when defendant answered, Love told him Tera said he had drugs in the trailer. Defendant denied he had drugs in the trailer. Defendant also denied Love's request to search the trailer for the drugs without a warrant. At that point, defendant was standing outside the trailer; however, Love did not recall whether he told defendant to come out of the trailer or if defendant came out on his own.

Upon Love's request, Tera told Love she would testify before a judge about what she had seen in the trailer. As a result, Love sent her with Officer Skidis to secure a search warrant for the residence. Love went back to the porch and told defendant what was happening. From that point, Love did not allow defendant to reenter the trailer unless accompanied by police so that defendant could not destroy or dispose of the evidence. Love allowed defendant to enter the residence on two or three occasions to get cigarettes and make telephone calls, during which times Love stepped "right inside the door and just stood by the doorway the entire time."

According to the trial court, the search warrant was issued at 5:05 p.m. When police returned with the warrant, they entered the trailer, found cannabis and drug paraphernalia and placed defendant under arrest. Love testified that, before this point, no officer had told defendant he was under arrest, placed him in handcuffs, or told him he was not free to leave. Love testified no search of defendant's residence took place prior to the arrival of the search warrant.

Defendant testified his wife arrived with police officers at ap-

proximately 3:15 p.m. While Tera removed her belongings the police remained on the porch and did not enter the trailer. After Tera finished, Love came to the door and told defendant about Tera's claim that there was marijuana inside the residence and that Love asked to search the trailer. Defendant told Love he could not search without a warrant. Defendant testified he was outside the trailer when he heard Love and Tera talking about obtaining a search warrant and that Tera agreed to leave to testify, and that he stayed outside the trailer on the porch until the warrant came. Love did allow defendant to enter the trailer to retrieve cigarettes and to make telephone calls. Love was present but did not search the trailer at those times. Love told defendant that he could not wait inside the trailer by himself, but had to be accompanied by an officer, until police arrived with the warrant. Defendant testified that had he been allowed to go back into his residence alone he "would have destroyed the marijuana."

Defendant estimated it took police one to two hours to return with the search warrant. When they returned with the warrant, he entered the trailer and showed them where the drugs were located. After police found the drugs, they arrested him, searched and handcuffed him, and advised him of his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). While waiting for the search warrant, police never told defendant he was not free to leave.

■ The issue before us is whether the securing of a dwelling by police for approximately two hours while awaiting a search warrant, and not allowing the resident defendant into the dwelling unless accompanied by an officer to prevent the removal or destruction of evidence inside the dwelling, violates defendant's fourth amendment rights against unreasonable searches and seizures. Defendant does not contest the validity of the search warrant or that probable cause existed to secure the residence. A trial court's decision whether to suppress evidence will not be disturbed on review unless manifestly erroneous. *People v. Alvarado*, 268 Ill. App. 3d 459, 463, 644 N.E.2d 783, 786 (1994). However, " 'where neither the facts nor credibility of the witnesses is contested, the issue *** is a legal question which a reviewing court may consider *de novo*.' " *Alvarado*, 268 Ill. App. 3d at 463, 644 N.E.2d at 787, quoting *In re D.G.*, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 (1991). We review this matter as a question of law to determine whether defendant's fourth amendment rights were violated.

■ A seizure affects an individual's possessory interests while a search affects his privacy interests. *Segura v. United States*, 468 U.S. 796, 806, 82 L. Ed. 2d 599, 609, 104 S. Ct. 3380, 3386 (1984) (opinion of Burger, C.J., joined by O'Connor, J.). A "seizure" occurs when a

meaningful interference with an individual's possessory interests occurs. *Segura*, 468 U.S. at 822, 82 L. Ed. 2d at 620, 104 S. Ct. at 3394 (Stevens, J., dissenting, joined by Brennan, Marshall, and Blackmun, JJ.). The fourth amendment, by its terms, prohibits only "unreasonable" searches and seizures. U.S. Const., amend. IV; *Segura*, 468 U.S. at 806, 82 L. Ed. 2d at 609, 104 S. Ct. at 3386 (opinion of Burger, C.J., joined by O'Connor, J.). A seizure based upon probable cause that is reasonable when it commences may become unreasonable as a result of its duration or other circumstances. *Segura*, 468 U.S. at 812, 82 L. Ed. 2d at 613, 104 S. Ct. at 3389 (opinion of Burger, C.J., joined by O'Connor, J.).

The State argues that, in *Segura*, the Supreme Court held that the fourth amendment permits admission of evidence found in a dwelling during execution of a valid search warrant when the police secured the dwelling from the inside for 19 hours while awaiting issuance of the search warrant. The State contends that *Segura* supports a finding that the fourth amendment permits admission of the evidence seized in this case.

In *Segura*, police arrested petitioner in the lobby of his apartment building, took him to his apartment, entered the apartment, and arrested everyone present. *Segura*, 468 U.S. at 800-01, 82 L. Ed. 2d at 605-06, 104 S. Ct. at 3383 (opinion of Burger, C.J., joined by White, Powell, Rehnquist, and O'Connor, JJ.). Two officers remained inside the apartment for 19 hours after the initial entry until the search warrant was issued and executed, while the petitioners remained under arrest and in custody at police headquarters. *Segura*, 468 U.S. at 801, 82 L. Ed. 2d at 606, 104 S. Ct. at 3383 (opinion of Burger, C.J., joined by White, Powell, Rehnquist, and O'Connor, JJ.). In a 5 to 4 decision affirming the admission of the evidence seized pursuant to the warrant, the Court held in part IV (and also restated in part I) that "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents" under the fourth amendment. *Segura*, 468 U.S. at 810, 82 L. Ed. 2d at 612, 104 S. Ct. at 3388 (opinion of Burger, C.J., joined by O'Connor, J.).

The authority of the *Segura* decision has been questioned. See J. Dressler, *A Lesson in Incaution, Overwork, and Fatigue: The Judicial Miscraftsmanship of Segura v. United States*, 26 Wm. & Mary L. Rev. 375 (1985) (hereinafter Dressler). First, only two justices joined in part IV of the opinion, and so part IV is not part of the opinion of the Court. *Segura*, 468 U.S. at 797, 82 L. Ed. 2d at 600, 104 S. Ct. at 3380. Consequently, neither part IV, nor part I, which incorporates the hold-

ing stated in part IV, is binding precedent upon lower courts. *People v. Casazza*, 144 Ill. 2d 414, 419-20, 581 N.E.2d 651, 654-55 (1991); see Dressler, at 416 ("[p]art IV is, in fact, a concurring opinion by two justices, and can be deleted without affecting the opinion"). Second, the Court (in part IV) never determined whether police effect a seizure of the premises and its contents within the meaning of the fourth amendment when they secure a dwelling. The justices assumed such action constituted a seizure of the residence and its contents, but in that case concluded that the seizure was not unreasonable under the circumstances. *Segura*, 468 U.S. at 806, 82 L. Ed. 2d at 609, 104 S. Ct. at 3386 (opinion of Burger, C.J., joined by O'Connor, J.). Nor did the Court express a view regarding whether securing a dwelling may "legitimately extend to limiting the freedom of movement of persons within, into or out of the impounded premises" (3 W. LaFave, Search & Seizure § 6.5(c), at 366 (3d ed. 1996) (hereinafter LaFave)) or if such action constitutes a seizure or illegal arrest of the defendant resident. The Court did, however, seem to limit its holding (part IV) to the specific facts before it. During the time the police secured the dwelling from the inside, the petitioners were under arrest and in police custody. As a result:

"The actual interference with their possessory interests in the apartment and its contents was, thus, virtually nonexistent. [Citation.] We are not prepared to say *under these limited circumstances* that the seizure was unreasonable under the Fourth Amendment." (Emphasis added.) *Segura*, 468 U.S. at 813, 82 L. Ed. 2d at 614, 104 S. Ct. at 3390 (opinion of Burger, C.J., joined by O'Connor, J.).

Both the *Segura* majority and the dissent implied that securing a residence from the outside when probable cause exists may not violate the fourth amendment's prohibition against unreasonable seizures. Part IV of the opinion notes that the police in that case would arguably have been wiser to "secure the premises from the outside by a 'stakeout' " and that entry into a residence is illegal absent exigent circumstances even when police have probable cause and are awaiting a search warrant. *Segura*, 468 U.S. at 811-12, 82 L. Ed. 2d at 613, 104 S. Ct. at 3388-89 (opinion of Burger, C.J., joined by O'Connor, J.). The dissent acknowledged:

"Since these premises were impounded 'from the inside,' I assume impoundment would be permissible even absent exigent circumstances when it occurs 'from the outside'—when the authorities merely seal off premises pending the issuance of a warrant but do not enter." *Segura*, 468 U.S. at 824 n.15, 82 L. Ed. 2d at 621 n.15, 104 S. Ct. at 3396 n.15 (Stevens, J., dissenting, joined by Brennan, Marshall, and Blackmun, JJ.).

See also LaFave § 6.5(c), at 366 ("[a]ll members of the Court appear to agree that the mere seizure of the premises and contents (that is, a mere interference with possessory interests) is permissible on probable cause even absent exigent circumstances").

Several conclusions may be derived from *Segura*. First, the Court did not address whether police, when securing a residence, may limit the "freedom of movement of persons within, into or out of" the secured premises (LaFave § 6.5(c), at 366). The Court seemed to agree that the seizure of a residence and its contents is permissible absent exigent circumstances if there is probable cause, but that entry into the residence when securing it requires probable cause and exigent circumstances. LaFave § 6.5(c), at 366-67. Whatever may be gleaned from the *Segura* decision, it did not address how to handle those cases where "police enter and incident to the entry either keep persons entitled to be in the premises under close scrutiny or else require such persons to leave or not enter those premises." LaFave § 6.5(c), at 365.

Some courts have upheld the securing of a residence by police until a search warrant for the residence is issued. See, *e.g.*, *United States v. Crespo de Llano*, 838 F.2d 1006, 1011, 1016 (9th Cir. 1987); *Commonwealth v. Yesilciman*, 406 Mass. 736, 743, 550 N.E.2d 378, 383 (1990); see also LaFave § 6.5(c), at 362 ("[s]ome courts have assumed, for example, that it is permissible for the police to place a guard outside of premises and to bar entry during the period in which a search warrant is being sought or, if persons are allowed to enter, to prohibit them from taking items from the premises"). However, cases where courts have found it permissible for police to secure a residence from the outside and to bar persons from entering the residence while awaiting a search warrant:

> "typically involved situations in which the only person or persons who could have claimed a lawful right to entry were already in custody or were subject to arrest if they appeared, or in which the person who did appear consented to remain outside." LaFave § 6.5(c), at 362-63.

In *Casazza*, 144 Ill. 2d 414, 581 N.E.2d 651, the Supreme Court of Illinois concluded police had no authority to order persons off a yacht while police awaited a search warrant. *Casazza*, 144 Ill. 2d at 424, 581 N.E.2d at 656. Police went to defendants' yacht and informed the occupants that they either "could" or "would" obtain a search warrant and that people on board would have to leave while the police waited for the search warrant. *Casazza*, 144 Ill. 2d at 415-16, 581 N.E.2d at 652-53. After police asked one of the defendants if they could search the yacht, the defendant asked what would happen if he did not consent to a search. Police repeated they could obtain a search war-

rant and require those on board to leave while they waited for the warrant. The defendant then consented to a search of the yacht. *Casazza*, 144 Ill. 2d at 416, 581 N.E.2d at 653. In affirming defendants' motion to suppress the evidence discovered during the warrantless search of the yacht, the supreme court concluded the "police's illegal representation that they had authority to seize the yacht \*\*\*, the trial court correctly found, vitiated the voluntariness of [defendant's] consent to the search." *Casazza*, 144 Ill. 2d at 424, 581 N.E.2d at 656. The court also concluded that *Segura* provided no authority for defending the police conduct in that case. *Casazza*, 144 Ill. 2d at 420, 581 N.E.2d at 655. Similarly in *People v. Dale*, 301 Ill. App. 3d 593, 703 N.E.2d 927 (1998), the police lacked the authority to order the defendant to leave his possessions in the motel room, after evicting him from the room, when the police had the lock changed and one officer waited in the lobby while others secured a search warrant. *Dale*, 301 Ill. App. 3d at 601, 703 N.E.2d at 933. *Dale* explained that the *Casazza* court concluded police lacked the authority (because *Segura* did not support it) to seize premises while awaiting a search warrant. *Dale*, 301 Ill. App. 3d at 601-02, 703 N.E.2d at 933.

In *People v. Wahlen*, 111 Ill. App. 3d 194, 195-97, 443 N.E.2d 728, 729-30 (1982), police arrived with defendant at his dorm room between 4 and 4:30 on a Sunday morning and advised him and his roommate that either the residents could consent to a search of the dorm room or it would be sealed off until a search warrant could be obtained, at least 24 hours later. Both residents gave their consent to search the room. *Wahlen*, 111 Ill. App. 3d at 196, 443 N.E.2d at 729. In affirming the trial court's grant of defendant's motion to suppress evidence found in the room because the residents' consent was coerced, this court explained: "We know of no authority in the police to 'seal' a room until a warrant may be obtained (if it may be obtained at all), and the time element here is not insignificant." *Wahlen*, 111 Ill. App. 3d at 197, 443 N.E.2d at 730.

At the heart of this issue is the preservation of evidence. Clearly, if police secure a dwelling they prohibit the destruction of the sought-after evidence. On the other hand, if police do not secure a dwelling, they risk losing the evidence, and as defendant testified at the hearing, if police had not secured his dwelling, he would have destroyed or disposed of the drugs and paraphernalia. Another option the police in this situation had was to bypass obtaining a search warrant and make a warrantless entry into defendant's residence to retrieve the evidence, although the potential that evidence will be destroyed, alone, is insufficient to justify a warrantless entry of a home. *People v. Eden*, 246 Ill. App. 3d 277, 287, 615 N.E.2d 1224, 1230 (1993); *cf. People v.*

*Krueger,* 175 Ill. 2d 60, 67, 675 N.E.2d 604, 608 (1996) (exigent circumstances, including the ease with which evidence may be destroyed, excuse an officer's compliance with the knock-and-announce rule preceding an arrest or a search). Instead of searching the residence without a warrant, police in this case opted to wait for a judge's determination whether to issue a search warrant for defendant's residence.

This case does not fall within any of the three situations when courts have found it permissible for police to secure a residence from the outside while seeking a search warrant. See LaFave § 6.5(c), at 362-63. Nor is the police conduct in this case exactly like *Casazza* or *Dale* because there is no evidence the police affirmatively ordered defendant out of the trailer (and to leave his belongings) while awaiting the search warrant. This case represents a situation that *Segura* did not address. See LaFave § 6.5(c), at 365.

■ We find that there was no authority for the police action in this case. Defendant was inside his residence when the police came to his door and he refused to let them search without a search warrant. While the police were still on the premises defendant moved from the inside of his trailer out onto the front porch when police told him he had to remain outside the trailer or that he could go inside only if accompanied by an officer. Though not inside his residence, defendant was still on his premises when police refused to let him reenter the trailer unaccompanied. Even though police had probable cause to secure the residence (defendant does not dispute this), the police conduct amounted to a constructive eviction of defendant from his residence. This case is different from a situation in which the defendant resident is not on the premises when police arrive to secure the residence from the outside while seeking a search warrant; that is, where police, with probable cause, secure a residence and do not permit anyone arriving at the premises (from the outside) entrance into the residence.

Furthermore, the police also secured the dwelling from the inside when Love followed defendant into the trailer, and Love physically entered the trailer to observe defendant and ensure defendant did not destroy the evidence. Unlike *Segura,* where police entered the dwelling when the defendants were arrested and in custody, defendant here was not arrested and Love's entrance into the trailer amounted to both a meaningful interference with defendant's possessory interests (a seizure) and his privacy interests (a search). See *Segura,* 468 U.S. at 806, 82 L. Ed. 2d at 609, 104 S. Ct. at 3386 (opinion of Burger, C.J., joined by O'Connor, J.); see also LaFave § 6.5(c), at 366. Police entry into a residence absent exigent circumstances (even with probable cause) is illegal (*Segura,* 468 U.S. at 811-12, 82 L. Ed. 2d at 613, 104

S. Ct. at 3388-89 (opinion of Burger, C.J., joined by O'Connor, J.)), and no exigent circumstances here justified Love's entry into the trailer. See *Eden*, 246 Ill. App. 3d at 287, 615 N.E.2d at 1230. We conclude the police conduct in securing defendant's residence while awaiting the search warrant was an unreasonable seizure (and probably an unreasonable search) under the fourth amendment so that the evidence discovered in the residence upon execution of the search warrant was properly suppressed.

A person is "seized" within the meaning of the fourth amendment only when, considering all the circumstances surrounding the encounter with the police, a reasonable person would have believed he was not free to leave. *Crespo de Llano*, 838 F.2d at 1016. Whether the defendant was subjected to threats or a show of force by police is also a relevant consideration. *Crespo de Llano*, 838 F.2d at 1016. A defendant's subjective belief that he is under arrest is irrelevant in determining whether an arrest has occurred, but the police's intent and whether the defendant has been told that he is under arrest are appropriate considerations. *People v. Maltbia*, 273 Ill. App. 3d 622, 628, 653 N.E.2d 402, 406-07 (1995).

It is unclear whether the police effected a seizure of defendant's person when they secured his residence and, if so, whether the seizure was unreasonable. No evidence in the record indicates the police threatened defendant or made a physical show of force toward him. Prior to the police placing defendant under arrest after conducting the search pursuant to the warrant, no officer ever placed him in handcuffs, told him he was under arrest, or told him he was not free to leave. It appears that during the time police secured his residence defendant was free to go anywhere in the world except back into his trailer by himself. (However, despite the testimony, it is questionable whether police would have allowed defendant to leave the premises and whether defendant actually felt free to leave under the circumstances.) The securing of defendant's residence under these circumstances may have included an unreasonable seizure of defendant's person as well. But see LaFave § 6.5(c), at 366 ("to the extent that a stakeout [e]ffects a sort of seizure of the person of an individual who is thereby thwarted from gaining entry to the premises, it is again not remarkable that this may be done without either a warrant or exigent circumstances, for neither is necessary for a more substantial interference with a person—arrest—occurring off private premises").

We affirm the order of the trial court granting defendant's motion to suppress evidence.

Affirmed.

STEIGMANN and MYERSCOUGH, JJ., concur.