THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OSMIN PAYTON, Defendant-Appellant.

Third District    No. 3—99—0350

Opinion filed December 1, 2000.

Carrie B. Marche, of State Appellate Defender's Office, of Ottawa, for appellant.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Defendant, Osmin Payton, was charged with unlawful possession

of a controlled substance (720 ILCS 570/402(c) (West 1998)) and unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(b) (West 1998)). He filed a motion to suppress evidence which was denied, and he was subsequently convicted on both charges. In this appeal, he claims that his motion to suppress should have been granted. We reverse his convictions.

## BACKGROUND

At a hearing on the motion to suppress, police officer Robert O'Dekirk testified that while on patrol he spoke with a confidential informant at around 7 p.m. on November 30, 1998. He knew the informant as "a signed-up confidential informant" who was "working off" charges and had provided officers with information leading to arrests. He had personally received information from the informant on two or three prior occasions. The information included a report that someone was selling drugs and a description of where the drugs were hidden.

On the night in question, the informant told O'Dekirk that a black male wearing a bright yellow jacket was selling drugs from the porch of a house on Collins Street directly south of Church's Chicken. The house was one or two blocks from the location where the informant spoke with O'Dekirk. He did not provide the suspect's age or specify the type of drugs involved. O'Dekirk asked if the suspect had the drugs inside his mouth or pockets, and the informant said he believed they were hidden somewhere on the porch.

O'Dekirk and his partner drove to the house and saw a person (defendant) who matched the informant's description sitting on the porch steps with another person (Fred Northington). The house was converted into a two-flat apartment building, and the porch was not enclosed. O'Dekirk testified that the porch resembled a "standard deck."

The officers pulled their squad car onto the front sidewalk and approached the porch to speak with defendant. They had not observed any drug transactions. O'Dekirk's partner stood in front of defendant and Northington and began asking them general questions. Meanwhile, O'Dekirk walked up onto the porch and began looking for areas where drugs could be hidden. The only item of personal property he noticed on the porch was a barbeque grill. When defendant saw O'Dekirk approach the grill, he appeared "excited or scared" and tried to run inside the apartment. He said he wanted to get his mother, but O'Dekirk told him to sit down. O'Dekirk then lifted the cover off the grill and observed a bag filled with cocaine and another bag containing four smaller bags filled with cannabis. He had not smelled any cannabis burning or food cooking on the grill.

Defendant was arrested and advised of his *Miranda* rights. His mother exited the house and told the officers she owned the grill. She became agitated with defendant upon learning why he was arrested. At 7:50 p.m., defendant signed a form acknowledging that he had been advised of his rights and wished to speak to the police. He then told O'Dekirk and his partner that he was selling cannabis but did not know about any cocaine in the grill. O'Dekirk testified that defendant appeared to understand the officers' questions and never asked for an attorney or expressed a desire to remain silent. He further testified that he did not threaten, harm, or force the defendant into making a statement.

O'Dekirk's partner offered similar testimony. He added that he did not fear for his safety during the encounter with defendant.

Defendant testified that he was 17 years old on the night in question. His family lived in one of the apartments in the building and the other apartment was unoccupied. He said the officers pulled up onto the grass and immediately came to the porch. They asked for his name and inquired regarding who lived in the building. Defendant asked if he could get his mother, and the officers said no. He testified that he "went for the door" when O'Dekirk stepped up onto the porch. He said O'Dekirk handcuffed him, placed him in the squad car, and then searched the grill. He did not give the officers permission to come onto the porch or search the grill. He was advised of his *Miranda* rights and understood them. However, he testified that he agreed to answer the officers' questions only because they said his mother could go to jail if he did not confess.

The judge denied defendant's motion to suppress, finding that the informant was reliable, the porch was not curtilage, and the officers had probable cause to believe the grill contained drugs. The judge also found that exigent circumstances justified the warrantless search of the grill, stating that defendant would have disposed of the drugs if the officers had departed to obtain a warrant.

Defendant proceeded to a stipulated bench trial and was convicted of both charged offenses. In this appeal, he claims that his motion to suppress should have been granted because (1) the officers improperly searched the grill without a warrant, and (2) his subsequent confession was not voluntary.

## STANDARD OF REVIEW

■ Although we will not disturb the judge's factual findings unless they are manifestly erroneous, his ultimate determination regarding the reasonableness of the officers' warrantless search is subject to *de novo* review. *People v. Perez*, 288 Ill. App. 3d 1037, 681 N.E.2d 173 (1997).

## ANALYSIS

■ We agree with the judge's finding that defendant's porch was not curtilage for purposes of invoking fourth amendment protection. See *United States v. Santana,* 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976) (holding that a doorway to a house is a public place in which no reasonable expectation of privacy exists); *People v. Williams,* 275 Ill. App. 3d 249, 655 N.E.2d 1071 (1995) (same result where the defendant was arrested on an open porch). However, that determination does not resolve the question of whether defendant had a privacy interest in the grill sitting on the porch. "[W]hat [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States,* 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511 (1967). Such protection exists if (1) the defendant exhibited an actual expectation of privacy in the object of the challenged search, and (2) society is willing to recognize that expectation as reasonable. *California v. Ciraolo,* 476 U.S. 207, 90 L. Ed. 2d 210, 106 S. Ct. 1809 (1986).

■ Defendant exhibited an expectation of privacy in the grill by closing its opaque lid after placing the drugs inside. We are convinced that such an expectation is socially reasonable. It is hard to imagine a member of our society not being surprised, and even defensive, upon discovering an uninvited person on his porch lifting the lid from his family's barbeque grill and inspecting its interior. Accordingly, we conclude that the protections of the fourth amendment apply to O'Dekirk's search of the grill. We simply disagree with the *dictum* in *People v. Callaway,* 167 Ill. App. 3d 872, 522 N.E.2d 337 (1988), to the extent that it contradicts our conclusion.

■ The fourth amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const., amend. IV. A search without a warrant is presumptively unreasonable, subject to certain limited exceptions. *United States v. Karo,* 468 U.S. 705, 82 L. Ed. 2d 530, 104 S. Ct. 3296 (1984). The exception the judge found applicable to O'Dekirk's search of the grill was probable cause with exigent circumstances.

■ Probable cause exists when the facts and circumstances known to the officer are sufficient to warrant a reasonable person in believing the defendant committed an offense. *People v. Blake,* 268 Ill. App. 3d 737, 645 N.E.2d 580 (1995). However, "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 29 L. Ed. 2d 564, 584, 91 S. Ct. 2022, 2039 (1971). In determining whether such

circumstances exist, each case is evaluated by considering what the police knew at the time they acted and assessing whether their actions were reasonable under the prevailing circumstances. *People v. Eden*, 246 Ill. App. 3d 277, 615 N.E.2d 1224 (1993). The easy disposability of drugs does not *per se* create exigent circumstances when drugs are the subject of the investigation. *People v. Ouellette*, 78 Ill. 2d 511, 401 N.E.2d 507 (1979).

■ The State contends that the informant's tip coupled with defendant's furtive actions on the porch created probable cause. Even if this contention is true, the situation did not involve exigent circumstances justifying a warrantless search of the grill. The evidence suggests that O'Dekirk and his partner had little, if any, reason to fear for their safety. They could have asked for defendant's consent to search the grill, and they also could have spoken with his mother and asked for her consent. Furthermore, if consent had been denied, they could have secured the porch area to prevent any tampering with the grill while a warrant was obtained. Instead, however, they bypassed these options and searched the grill without a warrant. Such action was unreasonable and thus violated the fourth amendment. See, *e.g.*, *People v. Rushing*, 272 Ill. App. 3d 387, 649 N.E.2d 609 (1995) (finding no exigent circumstances to justify warrantless search of tool box despite report that it contained drugs and possibly a weapon). Defendant's motion to suppress the drugs should have been granted.

Since the State cannot prove its charges without the drugs, we reverse defendant's convictions outright. See *People v. Sweborg*, 293 Ill. App. 3d 298, 688 N.E.2d 144 (1997). Our reversal obviates the need to address defendant's claim regarding the voluntariness of his confession.

## CONCLUSION

For the foregoing reasons, the judgment of the Will County circuit court is reversed.

Reversed.

KOEHLER and LYTTON, JJ., concur.